[No. 7855.]

SATISFACTION TITLE AND INVESTMENT COMPANY v. YORK ET AL.

1. PRINCIPAL AND AGENT—*When the Relation Exists*—Defendants had employed one P. to find a purchaser for certain lands. After nearly two years had elapsed, no sale having been effected, a corporation was organized, and P. having become its manager, and having applied to defendants on behalf of the corporation to know if the price previously specified still controlled, defendants listed with him the same, and other lands. Defendants had no knowledge upon this occasion, of the organization of the corporation, nor that P. was acting on its behalf. *Held*, that defendant's ignorance in no manner affected the right of the corporation to recover commissions upon a sale subsequently made, and of which it was the efficient cause.

2. TRIAL—*Questions for Jury*—Where in an action by a land broker for commissions upon a sale alleged to have been induced by him, his employment, as well as whether he was the producing cause of the sale are in issue, such questions are for the jury.

3. BROKER—*Right to Commissions*—A broker who is the efficient cause of a sale may recover his commissions though he had no personal acquaintance with the purchaser and did not present him to his principal.

*Error to Montrose District Court.*—Hon. SPRIGG SHACKLEFORD, Judge.

Messrs. CATLIN & BLAKE, for plaintiff in error.

Mr. C. J. MOYNIHAN and Messrs. SHERMAN & SHERMAN, for defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the court: ▸

This is an action by the plaintiff in error, plaintiff below, to recover from the defendants in error, defendants below, a commission as broker for the sale of certain of defendants' lands. The defendants were the owners of several tracts of lands including the premises in question. They had, about two years prior to the occurrences upon which the suit was based, listed certain of their lands for sale with one Lincoln Pysher.

Afterward, and on the 24th day of February, 1911, the plaintiff was organized as a corporation and the said Pysher became its general manager. Afterward and about the 1st of March, 1911, Pysher drove out to the house of the defendants and what occurred at that time is better stated in his own language:

"I went out to the York place to revise the list that I already had, and asked her if the old prices she had formerly given me would still be effective, if it would still be all right, and we talked the matter over, I and Mrs. York, and she concluded that instead of just simply listing some of the property, that she had formerly required me to sell, she would add some more to it, and consequently she listed all of her property, at that time for sale with the exception of a small tract between the railroad and the north forty, about fifteen acres. All of her land laying south of the railroad was afterwards sold. $14,000 was the price placed on the land that was sold that lays south of the railroad. She was to pay a commission of 5 per cent. The property south of the railroad was listed with me at that time at $14,000 without the crop. If the crop went

with the south forty, I was to sell it for an additional $500.00."

Mrs. York was acting for herself and as guardian for her two children. Pysher testifies that afterward and at the earnest request of Mrs. York he made a special effort to sell the property, that he showed the property to numerous prospective purchasers. That among these was a Mr. Nelson, introduced to the plaintiff by his neighbor Julius Krogh, and at that time the plaintiff drove Nelson and Krogh over the premises, and priced the particular lands in question to Nelson, in Krogh's presence. Nelson did not buy, but afterward Krogh advised Pysher that other friends of his were coming to look for lands, and that later a cousin, Peter Krogh, did come. That Pysher asked Julius Krogh if this was one of the persons he had referred to as desiring to purchase lands. That Krogh replied that he was, but that he did not know that he would purchase at that time, but said, "You might show us around, he might buy something if he could find a bargain." Pysher reminded Krogh of the York land which they had examined together with Nelson, and asked him to speak to his cousin about it, and arranged to take the two Kroghs to see it the following morning. Pysher accordingly went to the residence of Krogh the following morning and was advised that the Kroghs had gone to see another tract of land. But was told by Krogh that evening when he again called, that the cousin Peter Krogh had contracted to purchase the York land. Pysher then called up Mrs. York and told her that he claimed his commission and wanted her to so understand before she consummated the sale. Mrs. York declined to discuss the matter with him.

The agreed commission was five per cent. of the purchase price and the land was sold for the listed price of $14,000. The defendant offered no testimony, but at the close of plaintiff's testimony moved for a non-suit, which motion was sustained by the court, and the jury discharged, upon which ruling the case is before us for review. Defendants in error

have filed no brief, and the reasons for the courts action must be gathered from the language of his ruling as follows:

"The evidence in this case discloses the fact that this man, Lincoln Pysher, had an agreement with the defendant, Lillie T. York, to take her property and attempt to sell it, and that listing, as it is denominated by the witness for the plaintiff in this case, occurred a couple of years ago, or at any rate a long time before the plaintiff in this case, which is a corporation, had any existence under the law. The witness testifies that last spring he had a talk with Lillie T. York, and that he had gone out there and revised his lists, and to ascertain if there were any changes. The conversation with Mrs. York was such that it could not have been anything else than a perpetuation of the old contract, and that any agreement that he made with her was simply an agreement as to his own agency for her; it affirmatively appears that this is the case. Now, the doctrine as to the undisclosed principal as attempted to be applied to this case by the plaintiff, is certainly not applicable; he could not have been an agent for a non-existing company. I hold then that there is no contract existing between the plaintiff corporation and the defendant.

As to the further proposition involved in this case, as to whether the company or Pysher was the procuring cause of this sale, I am constrained to hold that it affirmatively appears from the testimony of Pysher himself, that he was not the procuring cause; he did talk to a cousin of the purchaser, Julius Krogh; he never, according to his own testimony, asked Krogh to do anything; Julius Krogh did go out there and have this talk and made a contract with the defendant in this case, and she sold the property to him, but neither Pysher or the company had ever seen the purchaser, or had any talk with him, and there is no evidence to show that he had even induced this Julius Krogh to influence his cousin to buy it; the evidence shows affirmatively that he intended, himself, to have the interview with him, and to take him out to the ranch and

show it to him; so the motion for a non-suit will be sustained, and the jury will be discharged from the further consideration of the case; there is no directed verdict."

It appears from this that the court held: 1. That the arrangement between Mrs. York and Pysher on February 24th, 1911, was a continuation of the agreement of two years before, and therefore with Pysher personally, hence the corporation cannot recover; 2. That Pysher did not ask Peter Krogh to purchase the land and did not induce Julius Krogh to influence the purchaser in the matter.

As to the first finding, it clearly appears from the evidence of Pysher, that the listing on February 24th, was a new arrangement, for it contained the inclusion of other lands, and for a fixed price for the tract, with the additional lands, so to be offered. There can be no doubt from the testimony that Pysher was acting at that time for the plaintiff corporation, though there was no mention of this fact to Mrs. York. Neither does it appear that Mrs. York knew of the existence of the corporation. But this could in no sense affect her interests or her rights in such case. Neither can it affect the right of the real party in interest to recover.—*Parker v. Cochran,* 11 Colo. 367, 31 Cyc. 1599.

As to the second reason given by the court for his action in sustaining the motion for a non-suit, it is well settled that as to whether or not the plaintiff was the efficient means of bringing the seller and the purchaser together, was for the jury and not for the court. 19 Cyc. 286, 287.

In fact, both questions upon which the court determined this case should have been submitted to the jury under proper instructions, for they clearly involve findings of fact and not conclusions of law. It is the rule of law in this jurisdiction: That is to say he must have found and produced a person who was ready, willing and able to purchase the property which he was engaged to sell, at the price and upon the terms and conditions fixed by his employer, and must make it appear

that he was the efficient agent, or procuring cause of the sale, and that the means employed by him and his efforts resulted in this sale."—*Chaffee v. Widman,* 48 Colo. 34.

In order to entitle the plaintiff to recover it is not necessary that the broker should know the purchaser, or that the latter should be introduced by the broker to the owner. The fact of employment being conceded and with no dispute as to the price of the lands or the amount of the commission, it is sufficient if the broker shows that he was the moving cause of sale.—*Leonard v. Roberts,* 20 Colo. 88; *Leach v. Clemons,* 14 Colo. App. 45; *Williams v. Bishop,* 11 Colo. App. 378.

The judgment is reversed and the case remanded.

*Reversed and Remanded.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE GARRIGUES, concur.