[L. A. No. 15343.   In Bank.—December 30, 1935.]

WALTER E. DABNEY, Respondent, v. L. T. EDWARDS, Appellant.

(1)

E. V. Knauf for Appellant.

Harold C. Morton and Hanna & Morton for Respondent.

THE COURT.—The petition for a hearing in this case was granted for the reason that there were pending in this court several cases involving important questions with reference to the nature of the legal interests created and conveyed by certain oil and gas leases, and it was deemed advisable to postpone a final determination of the question involved in this case until the nature of such interests should be definitely determined and defined by this court. The facts

of the case are succinctly and correctly set forth in the opinion of the District Court of Appeal and are as follows:

"On January 25, 1929, Edward C. Doak was a licensed real estate salesman acting under Walter E. Dabney, the respondent, a licensed real estate broker. On that date he was authorized orally by appellant to sell for appellant certain oil leases, all of which were for a term of years, and two of which provided, in addition to the term specified, that the leases were to continue 'so long thereafter as gas or oil or either of said substances is produced therefrom in quantities sufficient to pay to pump, or otherwise to secure and save . . . ' The sale of the leases was consummated, appellant contending in the court below that Doak had agreed to accept 2½ per cent commission which was paid. Doak testified and the court found upon sufficient evidence that the agreement called for a commission of 5 per cent, one-half of which was to be paid as instalments were paid on the purchase price of the leases, and the other one-half on the happening of a contingency which did occur prior to the bringing of the lawsuit. Respondent admitted the receipt of one-half of the commission, and proved that the contingency upon which the payment of the other one-half depended had occurred, and demanded payment of the additional 2½ per cent for which he obtained the judgment, from which this appeal is taken. There is also an appeal from an order denying motion for new trial."

The primary contention presented by appellant as grounds for reversal is that the agreement to employ respondent was of the kind required to be in writing, and that since it was oral, respondent cannot recover. Subdivision 5 of section 1624 of the Civil Code provides that, "an agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission" is invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent. The question presented, therefore, is whether an agreement, employing and authorizing a real estate broker to sell oil and gas leases such as are here involved, is within the statute of frauds; or more specifically, does such an agreement contemplate the purchase of "real estate" as the term is used in subdivision 5 of section 1624 of the Civil Code?

It should be kept in mind that the agreement here involved between the seller and a broker or agent deals solely with the compensation or commission receivable by the broker or agent for his services rendered in selling "real estate" and that subdivision 5 of section 1624 does not contain any provision specifically relating to "an interest in real estate". It is subdivision 4 of section 1624 of the Civil Code which provides that an agreement for the sale of real property *or an interest therein* shall be invalid unless the same or some memorandum thereof is in writing and subscribed by the party to be charged or by his agent. This latter type of agreement in which the parties are the seller and the buyer and the subject-matter is the property to be sold and purchased is, of course, separate and entirely distinct from the agreement here under consideration in which the parties are the seller of the property on the one hand and the broker or agent on the other, and the subject-matter of the agreement is the compensation or commission to be paid the broker or agent. In the agreement here involved "an interest in real property" may only be read into the subdivision by a broad and liberal interpretation of the term, "real estate".

Appellant contends that the term "real estate", as the term is used in subdivision 5 of section 1624 of the Civil Code, should be given a broad and liberal interpretation; that it should not be limited to the technical common law definition of an estate of freehold, but should be enlarged to include "any interest or estate in land". Respondent contends that the term "real estate" has a fixed, definite meaning, derived from the common law, which is synonymous with real property, which includes therein only freehold estates and excludes therefrom estates for years and estates of lesser duration, such as estates at will, from year to year, and at sufferance. It is his contention that although estates for years under the common law may be interests or estates in real property, they are not "real estate" or real property, but under the common law definition are classified as "chattels real", or personal property. It appears from the record that the case was tried upon the theory that the leases involved were similar in terms and were properly classifiable in the same category of property interests. At the oral argument before the District Court of Appeal it was suggested, apparently for the first time, that the two leases which provide for

a term of twenty years, "and so long thereafter as gas or oil or either of said substances is produced therefrom in quantities sufficient to pay to pump, or otherwise to secure and save . . . " created freehold estates in the nature of determinable fees, and that, notwithstanding the fact that the two leases which provided for a definite term of years might be properly classified as estates for years, and therefore, under the common-law definition of chattels real, as personal property, the two leases which contained the further provision that the term should continue "so long thereafter as gas or oil or either of said substances is produced therefrom in quantities sufficient to pay to pump, or otherwise to secure and save . . . " must be classified as freehold estates, and, therefore, necessarily defined as "real estate".

The District Court of Appeal concluded, and in our opinion correctly so, that the definition of real estate as contained in said subdivision 5 of section 1624 of the Civil Code conformed to the common law definition of real estate and that the oil and gas leases herein which provided for a definite term of years, being properly classified as estates for years, were chattels real, or personal property, and, therefore, an agreement authorizing or employing an agent or broker to purchase or sell oil and gas leases which provide for a definite term of years is not invalid by reason of the fact that it is not in writing. In so far as the opinion of the District Court of Appeal may be limited in its discussion to oil and gas leases which provide for definite terms, we are in accord with the reasoning and conclusion therein expressed, and as so limited, we adopt that portion of the opinion of the District Court of Appeal which deals with the question of whether or not the interests created by oil and gas leases providing for definite terms are, or are not, "real estate" within the scope of subdivision 5 of section 1624 of the Civil Code. Said opinion, written by Mr. Justice Roth *pro tempore* with certain modifications, is as follows:

"Real estate at common law and in its generally accepted meaning is synonymous with real property. Estates for years at common law were classified as chattels real and regarded as personal property. Except in those cases where our courts have construed some particular statute, which by its own terms so defined real estate as to include an estate for years, a claim to an estate in or a right to possession of

real property, the common law definition has been definitely maintained and endorsed by the courts of this state. (10 Cal. Jur. 601; *Jeffers* v. *Easton, Eldridge & Co.,* 113 Cal. 345 [45 Pac. 680] ; *German-American Savings Bank* v. *Gollmer,* 155 Cal. 683, 686, 687 [102 Pac. 932, 24 L. R. A. (N. S.) 1066] ; *County of Ventura* v. *Barry,* 207 Cal. 189 [277 Pac. 333] ; *Summerville* v. *Stockton Milling Co.,* 142 Cal. 529 [76 Pac. 243] ; *Potts Drug Co.* v. *Benedict,* 156 Cal. 322 [104 Pac. 432, 25 L. R. A. (N. S.) 609] ; *Barr Lumber Co.* v. *Perkins,* 214 Cal. 531 [6 Pac. (2d) 948].)

''A perusal of the foregoing cases discloses the persistence with which our courts have maintained that 'the common law on the subject has not been changed by our statutes . . . (and that) there is a marked difference between *things* real and an interest or *estate* in things real'. (*Jeffers* v. *Easton, Eldridge & Co., supra,* at 353.) This position is further demonstrated by a comparison of the cases of *Pike* v. *Psihogios,* 68 Cal. App. 145 [228 Pac. 722], and *Nittler* v. *Continental Casualty Co.,* 94 Cal. App. 498 [271 Pac. 555, 272 Pac. 309]. In both cases hearings were denied by the Supreme Court. Both cases involved the construction of section 2 of 'An act to define real estate brokers and salesmen . . . ' approved June 1, 1917 (Deering's Gen. Laws, 1931 ed., Act 112). In the Pike case the court said: 'It will be observed that section 2 of said act, in its enumeration of the acts which only a duly licensed real estate broker may perform, does not specify either the sale of personal property or the sale of a lease to real property. It was, therefore, not necessary for Katugios to obtain a license under said section 2 to perform the services rendered by him to the plaintiff, and which forms the basis of this counterclaim.' In 1925, section 2 of the act in question was amended. (Stats. 1925, p. 600.) Thereafter the court in the Nittler case ruled exactly opposite to the rule in the Pike case, the court saying: 'As a result of the Pike decision the legislature, at its next session, amended this section of the act so as to expressly include within the definition of a real estate broker one who negotiated for or sold or exchanged a lease in real property.'

''While the exact question presented here has never been decided in this state with reference to oil leases, it has been squarely decided with reference to ordinary leases. (*Guy* v.

*Brennen,* 60 Cal. App. 452 [213 Pac. 265].) The legal doctrine announced by *Guy* v. *Brennen, supra,* is that the words 'real estate' as used in subdivision 5, section 1624, Civil Code (subd. 6 at the time of that case), means real property and not personal property and the corollary which follows, to-wit: That a contract of employment made with a real estate broker 'to sell a lease for years' is not within the statute of frauds and need not be in writing. This doctrine is apparently followed with approval in *Layne* v. *Malmgren,* 99 Cal. App. 742 [279 Pac. 670] ; *County of Ventura* v. *Barry,* 207 Cal. 189 [277 Pac. 333] ; *Spalding* v. *Bennett,* 93 Cal. App. 577 [269 Pac. 948] ; *Lind* v. *Huene,* 205 Cal. 569 [271 Pac. 1087] ; *Edgecomb* v. *Callahan,* 132 Cal. App. 248 [22 Pac. (2d) 521]. Other authorities are to the same effect: 17 Cal. Law Review 187; Nelson Law of Real Estate Brokerage, page 25; *Myers* v. *Arthur,* 135 Wash. 583 [238 Pac. 899] ; *Lowenmeyer* v. *National Lumber Co.,* 71 Ind. App. 458 [125 N. E. 67] ; *Barr* v. *Campbell Mill Co.,* 154 Wash. 83 [280 Pac. 929, 284 Pac. 1119].

"Appellant vigorously assails this doctrine, contending that there is a substantial distinction between an oil lease and an ordinary lease (*Graciosa Oil Co.* v. *County of Santa Barbara,* 155 Cal. 140 [99 Pac. 483, 20 L. R. A. (N. S.) 211] ) ; and that *Guy* v. *Brennen, supra,* has in effect been overruled in the case of *Wilson* v. *Earp,* 91 Cal. App. 538 [267 Pac. 112].

"In the Graciosa case the court says, at pages 144, 145, speaking with reference to the difference between an oil lease and an ordinary lease: 'There are material differences between such estates for years and the right and privilege to bore for and extract oil, held by plaintiff under its oil lease. . . . The right vested in plaintiff is an estate for years, so far as necessary for the purpose of taking oil therefrom, and it carries with it the right to extract the oil and remove it from the premises. This right constitutes, for the term prescribed, a servitude on the land and a chattel real at common law. (Civ. Code, sec. 801, subd. 5; sec. 802, subd. 6; *Harvey C. & C. Co.* v. *Dillon,* 59 W. Va. 605 [53 S. E. 928–937, 6 L. R. A. (N. S.) 628], and cases there cited; Thornton on Oil Leases, sec. 51.) . . . The right of the lessee under this contract is more than that of the ordinary lessee. It is of a different character and for a different purpose. He has no

right at all to the usufruct of the soil. His right extends to the extraction of a certain part of the substance of the land itself, to its permanent separation and removal and its conversion to his own use. The whole subject of the contract is to the effect, if not technically a sale and conveyance of a substantial and specific part of the land, at least a disposition and transfer thereof to another.'

"In the Graciosa case, as is suggested by the foregoing excerpt, the court was considering whether an oil lease could be assessed and taxed severally and separately from the real estate, the court holding that it could be so separately taxed, saying at page 145: 'It can be easily seen that the reasons for the rule applicable to ordinary leases for the use only, that the entire estate should be assessed to the lessor, are entirely lacking here, and that it would be a more just and reasonable adjustment of the burden of taxation of such oil leases to assess each party separately with the value of his right or estate in the land. There is no statute forbidding it. On the contrary, we think the statute at least permits it, if it does not require it.'

"In the Graciosa case, the court nowhere says that such a lease is real property, but on the contrary says: 'This right constitutes, for the term prescribed, a servitude on the land and a *chattel real at common law.*' (Italics ours.)

"It must be apparent, therefore, that even though our courts have recognized that there are substantial differences between an oil lease and an ordinary lease, that such recognition has not, by any decisions of the courts of this state, made an oil lease real property in the generic common law sense of that phrase. Our courts have held uniformly and unequivocally that the interest created by an oil and gas lease is a term for years, and as such it is personalty. (*Chandler* v. *Hart,* 161 Cal. 405 [119 Pac. 516, Ann. Cas. 1913B, 1094] ; *Barr Lumber Co.* v. *Perkins,* 214 Cal. 531 [6 Pac. (2d) 948].)

"Appellant criticizes the soundness of the rule announced by *Guy* v. *Brennen, supra,* because the court in its opinion in that case failed to take into consideration, or at least in its opinion failed to refer to subdivision 3, section 658, or subdivision 5, section 801, Civil Code, adding further that section 773 of the Civil Code suggests a general distinction between 'chattel' and a 'chattel real'.

"No specific mention is made in the Brennen case of these sections, but in *Jeffers* v. *Easton, Eldridge & Co.*, 113 Cal. 345 [45 Pac. 680], the court makes clear that by section 765 of the Civil Code, California follows the common law distinction between freehold estates and estates for years, and says: 'The same distinction is to be found in section 14 and in sections 657 to 663 of the same code.' And further, that the right of taking minerals mentioned in section 801, subdivision 5, Civil Code, is not an incorporeal hereditament which constitutes the subject of the oil lease, but is an easement attached to other land as an easement appurtenant thereto. In other words, section 801 has to do with easements over a servient tenement appurtenant to a dominant tenement. There is no such question in this case.

"The fact that section 773 of the Civil Code provides that 'an estate for life may be created in a term of years' can have no significance, for the reason as stated in the Jeffers case (pp. 352–353), 'A term for years is only personal property—a chattel real. "An estate for life, even if it be *pur autre vie*, is a freehold; but an estate for a thousand years is only a chattel, and reckoned part of the personal estate." (2 Blackstone's Commentaries, 143, 385–387.) "All leases for years are held by law to be of less value—perhaps it would be more proper to say of less dignity—than estates for life; estates for life being freeholds, and for years but chattels, and regarded as part of the personal estate, and cast upon the executor." . . . The common law upon the subject has not been changed by our statutes. The provision of section 1113 of the Civil Code, that only certain enumerated covenants shall be implied in transfers of property, is expressly limited to a conveyance by which "an estate of inheritance or fee simple is to be passed"; and by section 765 the common-law distinction between freehold estates and estates for years is followed, and it is declared that "estates for years are chattels real". The same distinction is to be found in section 14, and in sections 657 to 663 of the same code. There is a marked difference between *things* real and an interest or *estate* in things real. "The nature of the thing itself, therefore, does not determine the character of any particular estate that may exist in it, whether personal or real, but the extent and duration of the estate." (2 Cooley's Blackstone, 15, note 1.)' ▮ In short, at common law an estate for

life, even though imposed upon an estate for years, was regarded as a freehold and as real property. But an estate for years, even for 'a thousand years is only a chattel, and reckoned part of the personal estate' (*Jeffers* v. *Easton, Eldridge & Co., supra*), and this common-law distinction has been maintained in this state.

"The case of *Wilson* v. *Earp, supra*, in so far as it differs with the principles herein announced, cannot be followed."

■ Although we are in accord with the conclusion of the District Court of Appeal holding that the two leases which provide for a definite term of years were not included within the term, "real estate", we are of the opinion that the two leases which provide in addition to the definite fixed term specified that the leases are to continue "so long thereafter as oil or gas or either of said substances is produced therefrom in quantities sufficient to pay to pump, or otherwise to secure and save . . . " are included in the term, "real estate". It follows logically that if the legal interest created by oil and gas leases which provide for a definite term of years, being classified as estates for years at common law, are deemed to be personal property and are therefore excluded from the definition of "real estate as used in Subdivision 5 of Section 1624 of the Civil Code, that the legal interest created by oil and gas leases which provide for a term of indefinite and uncertain duration, which under the common law are classified as freehold estates in the nature of a qualified or determinable fee, must be deemed to be real property and therefore included in the definition of real estate as used in said section."

In the case of *Callahan* v. *Martin*, 3 Cal. (2d) 110 [43 Pac. (2d) 788], this court recently discussed in detail the nature of the property right created by a lease for production, and it was held that an operating lessee under a lease for a term of years, or for a term of years and so long as oil or gas should be produced in paying quantities, was an interest or estate in real property in the nature of a profit *a prendre* which is an incorporeal hereditament. It was further held: "Under the usual oil and gas lease the owner-lessor transfers to his lessee his right to drill for and produce oil and other substances. The right of the lessee presents a clear case of a profit *a prendre* in gross, a right to remove a part of the substance of the land. . . . This profit *a prendre* vests in the lessee an incorporeal hereditament, a present

estate, an interest in the land, which is a chattel real *if it is to endure for years."* (Italics ours.) (Citing authorities.) And in *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal. (2d) 637 [52 Pac. (2d) 237], the court continued the discussion, saying: "The profit *a prendre,* whether it is unlimited as to duration or limited to a term of years, is an estate in real property. If it is for a term of years, it is a chattel real. . . . *Where it is unlimited in duration, it is a freehold interest, an estate in fee, and real property or real estate."* (Italics ours.)

The leases which were the subject of sale by the licensed real estate salesman acting under respondent real estate broker are not in the record by reason of the fact that it was stipulated at the trial of the case that it was not necessary for them to be introduced in evidence, both parties agreeing that they were the "usual" oil and gas leases. In our examination into the question of the provisions ordinarily included in "usual" oil and gas leases, it has developed that there are an unusual variety of "usual" oil and gas leases. The record does not even disclose with certainty whether or not the "thereafter" clause is identical in both the leases containing the "thereafter" clause herein involved. It appears that there is a decided lack of uniformity of expression in the "thereafter" clause as found in the usual oil and gas leases. A lease may provide for the continuance of the lease after a definite period as long as oil or gas are found, discovered, obtained, or produced, using these words singularly or in combination, and such oil and gas leases generally have the added requirement that the finding, discovering, or obtaining, or producing be in paying quantities. (Summers, Oil and Gas, sec. 85, p. 293.) This lack of uniformity of expression in the "thereafter" clauses, however, is not material to the correct solution of the problem of the nature of the estate created and conveyed by leases containing such clauses, since in any event, whether the lease be terminated by a failure to find, discover, obtain, or produce oil or gas in paying quantities, the date of such termination, at the time of the execution of the lease, could not be definitely determined, and the duration of the term of such leases is therefore necessarily uncertain. The estates created by such leases are freehold estates in the nature of determinable fees. In this conclusion we are supported by ample authority from other jurisdic-

tions. (*Bruner* v. *Hicks,* 230 Ill. 536 [82 N. E. 888, 120 Am. St. Rep. 332]; *Poe* v. *Ulrey,* 233 Ill. 56 [84 N. E. 46]; *Terry* v. *Humphreys et al.,* 27 N. M. 564 [203 Pac. 539]; *Leonard* v. *Prater,* (Tex. Com. App.) 36 S. W. (2d) 216, 86 A. L. R. 499.)

Respondent concedes that had the phrase "for twenty years" been omitted, the lessee's estate would clearly have been of indeterminate duration. He argues that by the use of these words, "for twenty years" the parties intended to limit the term during which the lease should be binding on the lessee and to make the extended term optional rather than mandatory. It is his theory that after the expiration of the fixed term the lessee is to be regarded as having an estate which he can terminate at will, simply by failing to produce oil. This reasoning had its inception in the case of *State* v. *South Penn Oil Co.,* 42 W. Va. 80, 102 [24 S. E. 688], which held that the addition to the term of years of the clause "and so long thereafter as oil or gas may be found in paying quantities" did not give the lease such indefinite duration as to make the interest freehold in quantity. Respondent asserts that this state has accepted this view by reason of the fact that the holding in the above case was cited with approval in the case of *Harvey Coal & Coke Co.* v. *Dillon,* 59 W. Va. 605 [53 S. E. 928, 6 L. R. A. (N. S.) 628], which in turn was cited as authority in the case of *Graciosa Oil Co.* v. *Santa Barbara,* 155 Cal. 140 [99 Pac. 483, 20 L. R. A. (N. S.) 211]. The citation from the case of *State* v. *South Penn Oil Co., supra,* is as follows: "Nor does the addition to the term of years of the clause, 'and so long as oil or gas may be found in paying quantities' give it such indefinite duration as makes the interest freehold in quantity, for, after the expiration of the term prescribed, . . . the lessee, having the option to continue to pump if he can find oil in paying quantities, becomes a tenant at will, which may become a tenancy from year to year on the terms of the lease, but is not a freehold, because its extension after the end of the term prescribed depends upon his own act, the exercise of his own will; so, according to the terms of the instrument, that is as large an interest as the words will bear. Such super-added possibility of extended duration constitutes no part of the term of years prescribed, but is a new interest in the nature of an option to become tenant at will or from year to year by the exercise of

14

his own volition when the fixed term of years shall have expired.''

▮▮ We do not agree with this analysis of the effect of the inclusion of a ''thereafter'' clause in an oil and gas lease. The solution of the problem as to what is the nature of the interest or estate created by such instruments may be arrived at by a consideration of just exactly what is implied by the provision for a fixed term, with the further provision that the lessee's interest shall continue so long thereafter as oil or gas is produced. Obviously the lease is divided as to duration into two parts, the definite term, commonly called the exploratory period, and the indefinite term, beyond the exploratory period, for which the lease may be extended by production. The ''thereafter'' clause prescribes the condition of fact which must exist within or at the end of the exploratory period of the lease upon which the lease may be continued beyond the definite term, as well as the conditions which must exist after the end of the exploratory period, upon which the lease may continue indefinitely. In other words, during the definite fixed term, the lessee must complete its exploratory work [except in very exceptional cases when for some equitable reason the definite term may be extended] and having discovered and produced oil upon the leased premises within the definite fixed term must continue such production during the remainder of the fixed term in order to be entitled to continue the lease thereafter, and may continue as lessee thereafter only so long as production is continued. It is thus apparent that there are in fact two periods of time provided for by the *habendum* clause in such leases; the definite fixed term for exploration and discovery which vests immediately upon the execution of the lease and terminates in the absence of earlier forfeiture at the expiration of the definite fixed term, and secondly, the indefinite period for production which likewise vests immediately upon the execution of the lease and continues until oil or gas is no longer produced.

The doctrine that the lessee's interest is inchoate and does not vest until the discovery or production of oil or gas was expressly repudiated in the recent case of *Callahan* v. *Martin*, 3 Cal. (2d) 110 [43 Pac. (2d) 788]. It is true that the *physical power* to produce oil or gas does not come into being until the time that a well is drilled and oil or gas is obtained

therefrom, but the *right or privilege* to produce undoubtedly vests upon the execution of the lease. This indefinite term to produce oil or gas conveyed by the lease, vesting at the execution of the lease and continuing thereafter so long as oil or gas is produced, is subject to the possibility of termination at any time either by failure to discover oil at all upon the premises, the exhaustion of oil and gas prior to the end of the definite term, or the exhaustion of oil and gas subsequent to the end of the definite period set out in the lease. It is this possibility of termination which renders the term uncertain. We thus have conveyed in the same instrument a definite term for exploration and an indefinite term for production. It is self-evident that the main purpose of oil and gas leases is to produce oil or gas in paying quantities and that the provision to explore is subsidiary to this primary purpose. This being so, we think that the duration of this primary right to produce oil or gas for an indefinite period gives character to the instrument as providing for a term of indefinite duration.

It may be that the leases contain some provision, and they probably do, such as a surrender clause, whereby the lessee may rid himself of the liabilities and duties accruing under the lease by virtue of his covenants to explore, drill, continue production, etc. By means of such added provisions it is probable that the lessee may divest himself at any time during the fixed term or thereafter of any interest in the lease, but such possibility arises solely from these added provisions. We are not willing to concede that the lessee may, in the absence of such special provisions, simply by deciding not to continue production, exercise an option to not accept a renewal of the lease after the expiration of the definite term. (See *South Penn Oil Co.* v. *Snodgrass,* 71 W. Va. 438 [76 S. E. 961, 43 L. R. A. (N. S.) 848].) We are likewise unwilling to grant that the mere fact that the lessee by reason of such added provisions may terminate the lease at any time converts the estate granted into a tenancy at will. The lessor could not at his will terminate the estate granted by the *habendum* clause providing for a fixed definite term and so long thereafter as oil and gas is produced. (*Rich* v. *Doneghey,* 71 Okl. 204 [177 Pac. 86] ; see note, 3 A. L. R. 378.)

It is true that in the case of *Graciosa Oil Co.* v. *Santa Barbara, supra,* the case of *Harvey C. & C. Co.* v. *Dillon,*

*supra,* and "cases there cited" were cited as authority which included the case of *State* v. *South Penn Oil Co., supra.* It is to be noted, however, that this citation of authority is thrice removed, and moreover that the question involved in this case with reference to the quantity of estate created by an oil and gas lease containing a "thereafter clause" was not involved, the main question in that opinion being whether or not an oil lease could be assessed and taxed severally and separately from the real estate of the landlord. In any event, we are not now satisfied that the reasoning therein employed is correct.

It should also be noted that the cases cited by respondent in support of his argument that California has heretofore adopted the position that leases containing "thereafter" clauses are only estates for years are cases in which the leases under consideration were leases for a definite fixed term and did not contain "thereafter" clauses. (See *Chandler* v. *Hart,* 161 Cal. 405 [119 Pac. 516, Ann. Cas. 1913B, 1094], and *Barr Lumber Co.* v. *Perkins,* 214 Cal. 531 [6 Pac. (2d) 948].) The case of *Moore* v. *Heron,* 108 Cal. App. 705 [292 Pac. 136], did not involve the construction of an oil and gas lease but involved the question of whether or not one who had an option to secure an oil and gas lease provided certain exploratory work was done, could compel the lessor to specifically perform such an agreement to execute an oil and gas lease. The question here under consideration was not even remotely in question therein, and although some phrases extracted therefrom may seem to uphold one view, other phrases would equally well uphold the opposite view. It has no value as authority upon the problem here presented.

Although, as before stated, the leases which were the subject-matter of the sale by the real estate salesman are not in the record we have proceeded upon the assumption that the "thereafter" clause controls the duration of the leases. Since, according to the great weight of authority, the term clause which is the *habendum* clause dominates the period for which the lease shall run, it is hardly probable that there is included in the two oil and gas leases containing the "thereafter" clause under consideration here any provision that would compel a conclusion different from the one we have arrived at in our discussion of the "thereafter" clauses, i. e., that the estate was a freehold estate in the nature of a deter-

minable fee. But in view of the fact that the nature of the interests created by any lease must be determined by an analysis of the instrument as a whole, which requires a consideration of all the provisions contained therein, we do not wish to go so far as to irrevocably hold that the leases herein involved create freehold estates, but simply hold that, in the absence of other provisions which might perhaps compel a different conclusion, the *habendum* clause used in such leases creates a freehold estate and therefore requires a reversal of the judgment.

It should also perhaps be pointed out that, inasmuch as the case was tried in the lower court upon the theory that the leases were all classifiable in the same category of property interests and no distinction was made between the leases providing for a definite term which we have held to be chattels real, and not real estate, and those containing the "thereafter" clause providing for indefinite terms, which we have held to be determinable fees, and real estate, the evidence introduced relative to the agreement was not directed to the question of whether or not the agreement of employment was indivisible or severable. If it is severable the plaintiff may recover for the proper proportion of fees for the sale of the leases providing for a definite term and for the sale of the personal property; if it is not severable, plaintiff will not be entitled to any recovery. This is a question which will probably arise upon the new trial.

The District Court of Appeal correctly disposed of the two contentions made by appellant with reference to the recovery by plaintiff as real estate broker for work performed as salesman by Mr. Doak. Said portion of the opinion is as follows:

"Appellant urges further that at the time the oral contract in question was made, he did not know that Doak, the salesman, was working for respondent Dabney. At the time of the trial, counsel for the parties stipulated: 'Mr. Doak in January, 1929, was a licensed real estate salesman under Walter Dabney, the plaintiff, who was a duly licensed broker under the Real Estate Act of that time.' The foregoing stipulation amply supports the finding of the court that Doak was in fact the agent of respondent Dabney.

"Appellant further urges that since he did not know that Dabney was the principal of Doak, Dabney should not be permitted to recover the commission involved as an un-

disclosed principal. The right of an undisclosed principal to recover, however, is too well established to be open to question. (*Satisfaction Title etc. Co.* v. *York,* 54 Colo. 566 [131 Pac. 444].)''

Judgment is reversed.