[Civ. No. 7048.   Third Dist.   Mar. 17, 1944.]

RECLAMATION DISTRICT NO. 108 et al., Petitioners, v. CALIFORNIA GIBSON, as County Treasurer, etc., Respondent; F. F. COOPER et al., Interveners.

Downey, Brand & Seymour and Stephen W. Downey for Petitioners.

Hudson Ford, District Attorney, Colusa County, for Respondent.

Athearn, Chandler & Farmer and Milton T. Farmer for Interveners.

THOMPSON, J.—This is a petition for a writ of mandamus to require the respondent to execute under section 3466a of the Political Code an oil lease of real property belonging to Reclamation District No. 108. The interveners, who hold in trust matured and unpaid bonds of said district of the face value of $702,000, have filed their answer to said petition, asserting that the proposed lease is unconstitutional and illegal because it violates the obligations of their bond contracts, contrary to the provisions of article I, section 10, of the Constitution of the United States, and article I, section 13, of the Constitution of California.

The petition alleges that Reclamation District No. 108 was regularly organized; that the petitioners are the duly elected, qualified and acting trustees of said district; that the respondent is the duly elected, qualified and acting Treasurer of Colusa County, and ex officio trustee of said district; that the petitioners levied assessments in 1923 on the lands in said district, a portion of which, only, were paid; that upon proper proceedings, instituted under section 3480 of the Political Code, reclamation district bonds were issued and sold in 1925 and 1927, aggregating a sum in excess of $6,000,000; that a portion of said bonds are matured, overdue and unpaid; that the original assessments became delinquent, and the lands affected thereby were sold and conveyed to the respondent county treas-

urer, as trustee for said district, who still holds title thereto, and that the time for redemption of the property has expired.

It is then alleged that petitioners have the opportunity, and that it is for the best interest of said reclamation district and the bondholders thereof, to execute a twenty-year oil and gas lease on 7,200 acres of said land belonging to that district, to Loren L. Hillman, Inc., as lessee, for the consideration and upon the terms and conditions expressed in said proposed lease which is marked "Exhibit A" and attached to the petition. The lease provides for payment to the lessor of royalties equal to "one-eighth part of all the oil produced and saved from the demised premises" and "one-eighth of the net proceeds derived from the sale of gas from each well while same is being sold or used off the premises." It also provides that in the event drilling operations on said land are not commenced on or before April 6, 1944, the lessee is to pay to the lessor annually $1.00 per acre for the land described therein. It is alleged the trustees of said district regularly adopted a resolution on November 12, 1943, authorizing the execution of said lease, and that they have duly executed the same on their part, but that the respondent, as treasurer of said county and as trustee of the district, refuses to do so. The petition then asks for a peremptory writ of mandamus to compel respondent to execute the lease.

By authority duly conferred, the Bondholders Protective Committee, which holds matured and unpaid bonds of said reclamation district in the aggregate amount of $350,000, upon which 35 per cent, only, has been paid, has intervened and filed in this proceeding its answer to the petition. The only issue raised by that answer is the contention that the proposed oil lease is illegal and unconstitutional because it violates the obligations of their bond contracts construed in the light of the statutes applicable thereto which were in effect at the time the bonds were issued and sold. In other words, it is asserted that an oil and gas lease, as distinguished from an ordinary usufructuary lease, sells and conveys an interest in the real property permitting the removal of a valuable portion thereof which cannot be restored and which therefore diminishes the value of the freehold and impairs the value of the bonds secured thereby. It is argued that since the real property was acquired by the reclamation district on sale for delinquent assessments as provided by

law, the only authority which the trustees possess, as provided by section 3480 of the Political Code, as it existed in 1923 when the bonds were issued and purchased (Stats. 1923, p. 606), is to sell the land at public auction to the highest bidder for cash. That portion of the section then read:

"If any land so held by a county treasurer as trustee of the bond fund of a district shall remain unsold after the final installment of the assessment shall have been collected by payment or sale, then such treasurer shall sell all said land so held by him at public auction to the highest bidder for cash, upon two weeks published notice, and shall deposit the proceeds of such sale in the treasury of the main county, to the credit of the bond fund of the district."

It is true that the authority for the trustees of a reclamation district to lease lands belonging to the district is limited by the provisions of the statutes in effect at the time of the issuing and sale of the bonds in question or to the reasonable inferences to be drawn therefrom. Such statutes become an inseparable part of the contracts. (*Hershey* v. *Cole*, 130 Cal.App. 683 [20 P.2d 972] ; 11 C.J.S. 420, sec. 40e.)

Ever since 1917, without modification in that respect, subdivision 10 of section 3454 of the Political Code (Stats. 1917, p. 1193) has authorized the board of trustees of a reclamation district:

"To sell, convey, transfer, *lease to others* or otherwise dispose of such real or personal property belonging to the said district which said board of trustees shall find no longer necessary for the construction, maintenance or operation of the works of reclamation of said district; also to lease to others or to operate for hire any tools or machinery belonging to the said district which is not at the time needed by the district."

But the intervener asserts that the foregoing authorization must be confined to the ordinary usufructuary lease, and that it may not be extended to a lease for the purpose of discovering and extracting minerals for the reason that the latter type of lease includes not only the features of an ordinary lease but also a sale and disposition of minerals which are a part of the freehold and results in a permanent reduction of the value of the real property which impairs the obligations of the bonds secured thereby. That contention raises a serious question which has not been heretofore

directly determined by any cases which have been called to our attention. Two questions are thereby raised, first, was the reclamation district authorized by statute to lease the property for oil and gas purposes, and, second, must this court assume, without evidence of the effect of that lease upon the bonds, that it will impair the obligations of the contracts.

In the recent case of *Reclamation District No. 1500* v. *Raub*, 58 Cal.App.2d 491 [137 P.2d 45], this court held that a reclamation district has the authority, under circumstances similar to those of the present proceeding, to lease land belonging to the district for oil and gas purposes. The Supreme Court denied a hearing in that case. It is true that these interveners were not parties to that action. But it squarely determines that the statute authorizes the trustees of a reclamation district to lease its real property for oil and gas purposes. The Raub case appears to be controlling in that regard. The statute authorizing the leasing of land makes no distinction between oil and gas leases and ordinary usufructuary leases.

It is true that a distinction has been drawn by the authorities between a mineral lease and an ordinary usufructuary lease. (*Richardson* v. *Callahan*, 213 Cal. 683 [3 P.2d 927]; *Stone* v. *City of Los Angeles*, 114 Cal.App. 192 [299 P. 838]; *Chandler* v. *Hart*, 161 Cal. 405, 414 [119 P. 516, Ann.Cas. 1913B 1094]; 24 Am.Jur. 544, sec. 39.) Both types, however, are included in the term "lease." The chief characteristics of both types of instruments bring them within the ordinary terms of what is commonly called a lease. In commenting on the differences existing between such instruments, the court says in the case of *Dabney* v. *Edwards*, 5 Cal.2d 1 [53 P.2d 962, 103 A.L.R. 822], at page 9 thereof:

"It must be apparent, therefore, that even though our courts have recognized that there are substantial differences between an oil lease and an ordinary lease, that such recognition has not, by any decisions of the courts of this state, made an oil lease real property in the generic common law sense of that phrase. Our courts have held uniformly and unequivocally that the interest created by an oil and gas lease is a term for years, and as such it is personalty. (*Chandler* v. *Hart*, 161 Cal. 405 [119 P. 516, Ann.Cas. 1913B, 1094]; *Barr Lumber Co.* v. *Perkins*, 214 Cal. 531 [6 P.2d 948].)"

We may not assume that merely because there are

certain recognized differences between an oil or mineral lease and an ordinary usufructuary lease, the statutes applicable to reclamation districts did not contemplate the right of the trustees to execute an oil and gas lease of its real property. We are of the opinion the statute authorized the trustees, in the exercise of a sound discretion, to "sell, convey, transfer, *lease to others* or otherwise dispose of such real or personal property belonging to the said district," (sec. 3454, Pol. Code) for the benefit of the district.

Nor may we hold that the portion of section 3480 of the Political Code, previously quoted, absolutely requires the trustees *immediately* to sell the lands acquired by purchase for delinquent assessments "at public auction to the highest bidder for cash." That section should be construed together with the provisions of section 3454, *supra*. Otherwise it might destroy the effect of the last mentioned section, and result in great detriment and loss to the district and to the bondholders, impairing the obligations of the contracts. Immediate sale of such real property to the highest bidder for cash might greatly reduce the value of the bonds. We think the statute wisely confers upon the trustees a sound discretion to determine when such sales may be made for the best interests of the district and its bondholders, and that, in the meantime the trustees may manage and control the property by operation or use thereof, or by leasing it, whichever may reasonably be deemed to benefit the district and the bondholders. With respect to authorizing, under section 3466a of the Political Code, the trustees to manage and control the real property, it is said in *Bank of Hawaii* v. *Gibson,* 15 Cal. App.2d 407, at page 420 [59 P.2d 559] :

"Section 3466a of the Political Code places all lands purchased by the treasurer, as trustee, under the 'management and control' of the trustees. When they lease the lands, out of the funds derived therefrom, they must first pay the expenses of 'holding and leasing' it. In determining what expenditures are essential to the 'management', and to the 'control' of these lands, and are incident to 'holding' them, some latitude must be allowed to the judgment and discretion of the trustees."

The intervener suggests that the execution of a lease on said lands creates an encumbrance in conflict with the provisions of section 3480 which require the treasurer upon sale to execute a deed thereof to a purchaser of said land, "free and clear of all encumbrances." Section 3466a of the Political

Code, which was enacted in 1931 (Stats. 1931, p. 773) and amended in 1935 (Stats. 1935, p. 2094) provides in part that:

"Upon such last mentioned sale being made as herein provided the said county treasurer shall execute a deed to the purchaser conveying the land sold, upon payment of the price bid, which deed shall have the effect of conveying title to the land sold to the purchaser *free of encumbrance,* except district assessments . . ., which upon the date of the sale herein provided had not been called, *and except as may be otherwise provided by law, . . . .*"

█ We are of the opinion the authorization for the trustees to lease the property (sec. 3454, Pol. Code) constitutes an exception "otherwise provided by law." The express and implied authority conferring upon the trustees the power to manage and control the property necessarily comes within the exception "otherwise provided by law." It is apparently inconsistent to construe the statutes so as first to authorize the leasing of land, and then to require the land to be conveyed upon sale "free and clear of all encumbrance" of a lease. Moreover, even though a purchaser of the land might complain of the encumbrance of a lease, we do not see how the bondholders may raise that question unless the encumbrance automatically impairs the obligations of their contracts.

█ We are of the opinion this court may not assume as a matter of law, in the absence of evidence of its effect upon the value of real property, that the execution of an oil and gas lease will necessarily reduce the value of the security for payment of bonds so as to impair the obligations of the contract. It is apparent that the annual rentals derived from the oil lease in question, or the royalties which may be paid under the terms of the contract may create a fund inuring to the benefit of the bondholders rather than to impair the obligations of their contracts. In the present proceeding there is no evidence that the land could be sold to advantage. Nor is there any affirmative showing that the execution of the oil and gas lease will either reduce the value of the bondholders' security or violate the obligations of their contracts.

The peremptory writ of mandamus should therefore issue. It is so ordered.

Adams, P. J., and Peek, J., concurred.

Interveners' petition for a hearing by the Supreme Court was denied May 11, 1944.