[L. A. No. 21212. In Bank. Nov. 28, 1950.]

FEDERAL OIL COMPANY (a Corporation), Plaintiff and Respondent, v. NELLE P. BROWER et al., Defendants and Respondents; HILO OIL COMPANY (a Limited Copartnership) et al., Appellants.

Marvin A. Freeman for Appellants.

Reynolds, Painter & Cherniss, Thomas Reynolds and Louis Miller for Respondents.

TRAYNOR, J.—The Federal Oil Company is the operating lessee under two leases for the production of oil and gas from adjoining tracts of land. Under the original terms of the first lease Federal had the right to produce oil and gas from a 16½-acre parcel of land. The lease provided that all wells should be bottomed under the land and that no wells should be drilled on a certain 100-foot strip on the edge of the leased premises. The lessee was given exclusive possession of the surface except for a limited right in the lessors to use the land for agricultural purposes. After Federal acquired its interest in the first lease it executed an assignment of a one and one-third per cent overriding royalty to defendants' predecessors in interest. This assignment provided:

"That the FEDERAL OIL COMPANY . . . does hereby sell, set over, transfer, assign and convey . . . the total amount of One and One-third (1⅓%) Percent . . . of the gross proceeds received from the sale of all of the gross oil which may be produced, saved, and/or sold at any time from the [16½ acre parcel] . . . held under lease by Assignor . . . .

"To HAVE AND TO HOLD forever unto the Assignee so long as oil and gas and/or other hydrocarbon substances shall be produced in paying quantities from said well[s] upon the

aforesaid premises and under the aforesaid lease, or any modification or substitution therefor . . . .

"The Assignor will not sell, encumber, assign or convey its estate, or any part thereof or any interest therein without first making adequate provision for the protection of the interest holders and submitting a copy of the assignment, conveyance or other instrument utilized for such purpose to the Division of Corporations of the State of California."

Approximately six years later Federal acquired by assignment from the Hilo Oil Company a subsurface lease from Culver City entitling it to produce oil and gas from beneath the surface of city lands by means of wells to be slant drilled from the surface of adjoining land. This city land was adjacent to the 16½-acre parcel already held under lease by Federal, and Federal with the cooperation of Hilo secured the right from the lessors under the first lease to slant drill under the city land from the 100-foot surface strip on which, under the original terms of the first lease, Federal was not permitted to drill. The assignment of the Culver City lease from Hilo to Federal reserved to Hilo a 16½ per cent royalty of all oil and gas and other hydrocarbon substances produced from any wells bottomed under the land described in the Culver City lease. The assignment also provided that Hilo should indemnify and hold Federal harmless from any claims to the Culver City oil based upon ownership of the royalty interests held by defendants. After Federal commenced to produce oil from a well bottomed under the Culver City land but located on the surface of the 16½-acre parcel, it brought this action to determine whether defendants were entitled to a one and one-third per cent royalty from the production of that well. The Hilo Oil Company and its partners were made parties to the action since under the terms of its indemnity agreement Hilo would be responsible to Federal if Federal should be required to pay defendants a royalty based on production of Culver City oil. The case was tried upon a stipulated statement of facts and the various documents defining the respective interests of the parties. The trial court held that defendants were entitled to a one and one-third per cent royalty from the oil produced by Federal from wells bottomed under Culver City land, and the Hilo Oil Company and its partners have appealed.

Hilo contends that the assignment of the overriding royalty of the percentage of oil to be produced from the 16½-acre parcel conveyed only the right to receive that percentage

of the oil produced from wells bottomed under the land, i. e., from wells whose producing intervals are within the vertical boundaries of the 16½-acre parcel. We agree with this contention.

 Federal, the operating lessee and assignor, held the exclusive right to produce oil and gas from the lessors' land. This right was of necessity limited to such right to produce oil and gas as the lessors had before the lease was executed. That right was limited to production from wells bottomed under the surface of the lessors' land. (*Pacific Western Oil Co.* v. *Bern Oil Co.*, 13 Cal.2d 60, 72-73 [87 P.2d 1045] ; *A. E. Bell Corp.* v. *Bell View Oil Synd.*, 24 Cal.App.2d 587, 595-596 [76 P.2d 167].) Accordingly, at the time defendants' overriding royalty interest was created it could not include a right to any interest in oil from wells bottomed outside of the 16½-acre parcel. (*Richter* v. *Adams*, 43 Cal. App.2d 184, 186-187 [110 P.2d 486].) Thus, if by virtue of the assignment and Federal's after acquired right to produce oil from Culver City lands, defendants now have a right to share in the Culver City oil it cannot be because any present interest in the Culver City property was created by the assignment. Such right in defendants could exist only if the assignment provided that the assignees should share in oil rights in adjacent property when and if the assignor should acquire them.

Although the granting clause of the assignment contains no such provision and purports to be no more than a present transfer of mineral rights in the 16½-acre parcel, it is contended that the *habendum* clause indicates the intention of the parties that defendants' interest should attach to any oil produced by any well upon the premises regardless of where such well might be bottomed. That clause provides:

"To HAVE AND To HOLD forever unto the Assignee so long as oil and gas and/or other hydrocarbon substances shall be produced in paying quantities from said well[s] upon the aforesaid premises and under the aforesaid lease, or any modification or substitution therefor."

 It is contended that Federal is producing oil from a well upon the premises under a modification of the original lease and that therefore defendants' interest attaches regardless of where the well is bottomed. Even if it be assumed, however, that a grant of a fraction of the production of wells *upon the premises* would carry greater rights than a grant of a fraction of the oil *to be produced from the premises*

(compare *Union Pac. R.R. Co.* v. *City of Los Angeles,* 53 Cal.App.2d 825, 830 [128 P.2d 408], with *Richter* v. *Adams,* 43 Cal.App.2d 184, 186-187 [110 P.2d 486]), the language in the *habendum* clause would not have the effect of broadening the meaning of the language of the granting clause. The *habendum* clause in the assignment here under consideration does not purport to do more than determine the duration of rights already granted. (See *Dabney* v. *Edwards,* 5 Cal.2d 1, 16 [53 P.2d 962, 103 A.L.R. 822].) It does not indicate an intention to broaden the language of the granting clause setting forth the physical source of the oil rights assigned.

Defendants contend, however, that unless the language of the assignment is interpreted to give them rights in oil produced from the adjacent Culver City land, the door will be opened for the operating lessee to defraud them of their rights by the expedient of slant drilling into the same oil pool that underlies the 16½-acre parcel and draining away through such wells the oil in which defendants would have had an interest had it been produced by wells bottomed under the 16½-acre parcel. This contention raises problems that are not unique to the slant drilling situation here presented. Thus if Federal had secured the right to drill vertically downward on adjacent Culver City land or the right to slant drill into the city land from other nearby property, the possible prejudice to defendants arising from potential drainage of the 16½-acre parcel would be the same. By operating on two adjacent properties under different leases from difference owners and with different groups of overriding royalty holders, the lessee is in the position of representing potentially adverse interests. Also the lessee's own interests may prompt his favoring production from one property rather than the other. To prevent abuses from arising because of these conflicting interests the remedy is not, however, to require the lessee of adjoining tracts to pay each group of royalty holders their full royalties on all of the oil produced from both tracts, but to require the lessee so to conduct his operations that no drainage occurs from one tract to the other. (*Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232, 241-242 [73 P.2d 1163]; *Bush Oil Co.* v. *Beverly-Lincoln etc. Co.,* 69 Cal.App.2d 246, 251-252 [158 P.2d 754].) Under the rule of these cases, if the lessee fails to perform this duty, the royalty holder may recover damages equal to his royalty on the amount of oil actually drained from under the land to which his interest is attached. Thus

in the Bush Oil Company case the operating lessee had drilled two wells on repondent's property and three wells on adjoining property. The trial court was able to determine from the evidence that one-fourth of the oil produced from the third well on the adjoining property was oil drained from beneath respondent's property and awarded respondent damages accordingly. A similar situation was presented in the Hartman case where the lessee had developed one of two adjoining tracts to a much greater extent than the other, and the jury was able to determine on the basis of expert testimony the extent of plaintiff's damages by drainage from one tract to the other. There is no evidence of drainage in this case, however. The record is devoid of any evidence that Federal is not fully protecting defendants' interests, or that it, as lessee, would benefit in any way from favoring production from the Culver City land over that from the 16½-acre parcel. Federal is obligated to pay greater total royalties on the Culver City production than on that from the 16½-acre parcel, and up to the time of trial it was operating five wells on the 16½-acre parcel while it had only one well in production from the Culver City land. Thus, even if this were an action to enforce Federal's obligations to defendants under the assignment rather than one to determine the extent of the rights created by it, there would be no basis in the record for granting to defendants all or any fraction of their royalty in the oil produced from the Culver City land.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Spence, J., concurred.

Schauer, J., concurred in the judgment.