339 P.2d 1019

George A. CHASE, Jr., Plaintiff and Appellant,

v.

Nicholas G. MORGAN, Sr. Charitable Foundation, a Utah corporation, Defendant and Respondent.

No. 8981.

Supreme Court of Utah.

June 1, 1959.

Ben D. Browning and John H. Allen, Salt Lake City, for appellant.

Elias Hansen, Salt Lake City, and Willard R. Huntsman, West Jordon, for respondent.

WADE, Justice.

George A. Chase, Jr., appellant herein, commenced this action against the Nicholas G. Morgan, Sr. Charitable Foundation, respondent herein, to recover for services allegedly rendered at its special instance and request in selling certain oil and gas leases. This judgment is an appeal from a judgment of no cause for action.

The trial court sitting without a jury found as a fact that appellant and his assignee had rendered services in selling leases held by respondent with the United States Government to the Sierra Madre Oil Company, and that respondent had orally agreed to pay to them the last three of the seven installment payments of $13,826.54 per month which the Sierra Madre Oil Company had agreed to pay for the leases. The court further found that Nicholas G. Morgan, Sr. subsequently wrote appellant a letter on behalf of respondent, in which there was a confirmation of the oral understanding between appellant and respondent that the last three payments provided for in the agreement between respondent and the Sierra Madre Oil Company should be paid directly to appellant. The court concluded,

however, that appellant could not recover these amounts because neither appellant nor his assignor had a license to do business as a real estate broker in Utah or to act as a salesman for a licensed broker in Utah as required by Chap. 2, Title 61, U.C.A.1953, when the services were rendered by them.

Appellant contends the court erred in concluding that he was precluded from recovery because he had not obtained a real estate broker's license because (1) the real estate broker's statutes do not apply to one who merely introduces a buyer to an owner; and (2) nor to transactions in the oil and gas business; and (3) because oil and gas leases are not real estate. We find no merit to any of these contentions.

■ The portions of Sec. 61–2–2, U.C.A. 1953 which define "Real estate broker" and "Real estate" within the terms of the Real Estate Brokers Act which are relevant herein read:

"61–2–2. 'Real estate broker'—'Real estate' defined.—The term 'real estate broker' within the meaning of this chapter shall include all persons, partnerships, associations and corporations, foreign and domestic, who for another and for a fee, commission or other valuable consideration, or who with the intention or in the expectation or upon the promise of receiving or collecting a fee, commission or other valuable consideration, sells, exchanges, purchases, rents or leases or negotiates the sale, exchange, purchase, rental or leasing of or offers or attempts or agrees to negotiate the sale, exchange, purchase, rental or leasing of, or lists or offers or attempts or agrees to list, or auctions, or offers or attempts or agrees to collect rental for the use of real estate or who advertises, who buys or offers to buy, sells or offers to sell or otherwise deals in options on real estate or the improvements thereon or who collects or offers or attempts or agrees to collect rental for the use of real estate or who advertises or holds himself, itself or themselves out as engaged in the business of selling, exchanging, purchasing, renting or leasing real estate or assists or directs in the procuring of prospects or the negotiation or closing of any transaction which does or is calculated to result in the sale, exchange, leasing, or renting of any real estate. The term 'real estate broker' shall also include any person, partnership, association or corporation employed by or on behalf of the owner or owners of lots or other parcels of real estate at a stated salary or upon a commission or upon a salary and commission basis or otherwise to sell such real estate or any parts thereof in lots or other parcels and who shall sell or exchange or offer or attempt or agree to negotiate the sale or exchange of any such lot or parcel of real estate.

\*    \*    \*    \*    \*    \*

"The term 'real estate' as used in this chapter shall include leaseholds and other interests less than leaseholds."

The testimony of appellant and his own witnesses disclosed that they were in the business of seeking oil and gas leases and finding buyers for them and that respondent had agreed it would sell its leases at a certain price, and the compensation would be any sum procured in excess of this set price. A buyer was found and appellant discussed terms with both respondent and the buyer and then introduced the buyer to respondent. As a result of the activities of appellant and his associates, respondent sold the leases to the buyer procured by them. Appellant's evidence and answer to interrogatories showed that the services agreed to be performed involved more than a mere introduction of a buyer to respondent and contemplated that a sale could be made by appellant; for instance, one of appellant's witnesses who was an associate of appellant who first made contact with respondent in regard to the sale of these leases testified as follows:

"A. Well I asked them if they had any oil or gas leases for sale and they said yes and gave me then a plat or a couple of plats, I believe, I think there was two bunches."

\*      \*      \*      \*      \*      \*

"A. Yes, that they said they wanted to sell. They put a price on them and at that time said that anything above

*that we could get for them* or if we found a buyer that they would compensate us for it." (Emphasis ours)

Appellant's own answer to interrogatories submitted by respondent was to the effect that respondent "advised us of an acreage block which they agreed to sell for the sum of $4.00 per acre, and agreed to pay us a commission of whatever *we could sell* said acreage for, in excess of said $4.00 per acre \* \* \*." (Emphasis ours)

It is clear from the above evidence that appellant and his associates were authorized to sell or negotiate the sale of the leases involved. Such an agreement contemplated more than the mere finding or introduction of a buyer and clearly was the sort of activity embraced within the definition of "Real estate broker" quoted above.

■ We are not impressed with appellant's second contention that transactions involving oil and gas leases should not come within the provisions of the Real Estate Brokers Act. There appears no good reason why the sale or negotiation of a sale by a broker of an oil and gas lease does not need the same protection for the good of the public that the sale or negotiation of any other lease involving real estate.

■■ Appellant's third contention that oil and gas leases are not "real estate because they were ordinarily estates for years and under the common law were classified as chattels real and considered personal

property[1] might have been persuasive were it not for the fact that the legislature saw fit to include within the definition of the term "real estate" leaseholds and other interests less than leaseholds. This clearly indicates the intention of the legislature that a broad coverage be given to the term "real estate" for the purposes of this Act. In Western Development Company v. Nell, 4 Utah 2d 112, 288 P.2d 452, this court held oil and gas were included in the term "minerals" in the absence of proof that the parties to the conveyance did not so intend. Undetached minerals are part of the earth and therefore realty.[2] The subject matter of the leases being realty it follows that the legislature intended that oil and gas leases should be included within the term "real estate" for the purposes of this Act.

Affirmed. Costs to respondent.

CROCKETT, C. J., and McDONOUGH, J., and R. L. TUCKETT, District Judge, concur.

HENRIOD, Justice (concurring).

I concur, since I believe the statute so broad as to include the type of transaction here, where there was a price "per acre" stipulated, there was a "lease" for 5 years, to continue "so long thereafter as oil or gas is produced," and particularly since we have construed gas and oil as "mineral" in the Western Development case. This determination springs from my belief that the *factual situation* here, the *legal* principles involved, and a reasonable *statutory construction* compel the conclusion that unless the plaintiff had written authorization to do what he did, the transaction was vulnerable to the legislation.

As to good conscience, this case is disturbing. The defendant, after all, *promised* that plaintiff should have the last three payments. That promise still persists, though unenforceable since defendant sought refuge behind legislation. Such sanctuary may be legally justified by a statute, to the exclusion of equitable attack, but there would seem to be little or no consolation in the making of a sacred promise only to break it with a statute.

The defendant not only *promised* that plaintiff would receive the money, but he reiterated his promise when, in a letter to plaintiff, the former said "This letter *confirms our verbal understanding * * * that the remaining three payments * * * be made direct to you.*" Why defendant received the three payments but turned two of them over to McDonald, president of Sierra Madre and one to an escrow, would seem explainable only because of the statute

---

1. Dabney v. Edwards, 5 Cal.2d 1, 53 P.2d 962, 103 A.L.R. 822 and 32 Am.Jur. Landlord and Tenant, Sec. 16, page 39; Brown's Law of Oil and Gas Leases, pp. 32–33, Sec. 3.04.

2. Bouv.Law Dict.1934; 36 Am.Jur. Mines & Minerals, Sec. 8, page 286.

and not by defendant's actions which, he must concede, were the antithesis of his promise and understanding.

It would appear to this writer that defendant's letter to plaintiff had the ear-marks of an assignment substantiating his understanding and promise. Whether, had McDonald, the escrow and Sierra Madre been joined as parties they effectively could have asserted the statute as could the defendant, is a problem not present here.