[Sac. No. 7569.   In Bank.   Jan. 28, 1965.]

WILLIAM A. AMES, Petitioner, v. THE BOARD OF SU-
PERVISORS OF EL DORADO COUNTY et al., Re-
spondents.

James R. Leavy for Petitioner.

Jack R. Winkler, District Attorney, for Respondents.

PEEK, J.—This is a petition by William A. Ames to compel
by mandate the County Clerk and the Board of Supervisors

of the County of El Dorado to certify as adequate his petition for the incorporation of delineated territory lying within that county or, in the alternative, to grant him additional time within which to perfect the petition.

Petitioner is the chairman of a citizens group which seeks to incorporate a new city on the shores of Lake Tahoe. Before this court he makes two contentions: (1) that respondent county clerk erroneously determined his petition to be inadequate for the reason that he failed to obtain sufficient "qualified signers" as those words are used in Government Code, section 34301 and (2) that the respondent board of supervisors erred in refusing to grant him further time within which to obtain additional signers as provided in said section 34301. All references by section numbers hereinafter are to the Government Code.

Section 34303 provides that: "Proceedings are initiated by filing with the board of supervisors at a regular meeting a petition signed by at least 25 percent of the qualified signers, representing at least 25 percent of the assessed value of the land included in the proposed city limits, as such value is shown on the last equalized assessment roll of the county. Where there is more than one qualified signer with respect to a parcel, the signature of any one qualified signer shall be sufficient to include the entire assessed value of the parcel. . . .

"The signatures on any petition filed pursuant to this section shall be obtained within a period of 120 days following the date on which the notice of intention to circulate a petition was filed. The board of supervisors may grant additional successive periods of 30 days each in which a petition may be circulated and signatures obtained."

"Qualified signer" as used in section 34303 is defined in section 34301 as ". . . the owner of an interest in fee, whether community or otherwise, of land situated within the limits of the city proposed to be incorporated."

Also pertinent to the question of the granting of an extension, as will hereinafter appear, is section 34307.1, which provides: "If the report shows that the petition is not signed by the requisite number of qualified signers, no further action may be taken under the proposal for incorporation. . . ."

The county clerk, using the last equalized assessment roll as a basis (§ 34306), determined that there were a total of 12,160 qualified signers within the limits of the proposed city, and that the total assessed value of the realty was $20,542,090. In accordance with such determination the board ruled that

petitioner would need the signatures of 3,040 qualified signers representing $5,135,522 of assessed land values.

The petition presented for filing was endorsed by 2,662 qualified signers representing $6,831,000 of assessed valuation. Thus it appears that predicated upon the figures supplied by the clerk, although the "qualified signers" of the petition were insufficient in numbers, they were the owners of land of sufficient assessed valuation and the clerk so reported to the board.

Thereafter petitioner sought to obtain a 30-day extension from the board so that his group might seek the additional signatures required by the clerk's ruling. The board refused the application, expressly stating that it did so "upon the sole ground that said board is without power to grant such additional time by reason of the provisions of section 34307.1 of the Government Code, and if said board did have the power to grant such additional time to circulate the petition, it would consider the merits of such request."

Petitioner's argument in support of his first contention is that the clerk and the board misinterpreted the term "qualified signers" as used in section 34303. It is his position that the total number of qualified signers should be the same as the total number of separate parcels, that is, one signer for each parcel whether owned by one or more persons. It is the clerk's and the board's position that *each* person having some fee interest in a multiply-owned parcel as well as a person who is the sole owner of a parcel, is a qualified signer. While petitioner obtained signatures of persons representing more than 25 percent of the separate parcels, such persons were less than 25 percent of the total number of persons who owned *some* fee interest in a parcel within the proposed city.

Although the parties are in sharp disagreement as to whether an individual owner of a multiply-owned parcel may, in effect, act for all of the owners, there is agreement that such an individual may commit the whole value of the property for purposes of determining the proportionate participation on a valuation basis, within the meaning of the statutory provisions.

■ The problem before us has not previously been judicially resolved (Cf. *People* v. *City of Garden Grove,* 165 Cal. App.2d 794, 797 [332 P.2d 841]), and is one of statutory construction. While sections 34301 and 34303 do not explicitly provide for a multiple number of qualified signers in the case of a multiply-owned parcel, the only guidelines provided lead to such a result. Thus section 34301 defines a "qualified signer" as the owner of "*an interest* in fee, *whether commu-*

*nity or otherwise,"* and section 34303 inferentially contemplates more than one qualified signer per parcel when, in connection with assessed valuations, it states: "Where there is *more than one* qualified signer with respect to a parcel. . . ." (Italics added.)

There is nothing inconsistent in the purpose of the statutory provisions and the construction given to them by the clerk and the board. It is manifest that the provisions are designed to require, as a prerequisite to an election for incorporation, not only the approval of persons who owned affected *property* of a representative valuation, but also the approval of a representative number of the *persons* who own any of such property. If petitioner's position is sustained, then a single qualified signer of a parcel owned in some form by several persons could commit all of such persons as well as all of such property by his approval, and his coowners who might oppose incorporation would, in effect, be disenfranchised. On the other hand, should all of such persons be included in the total number of qualified signers the representative portion of whom were required to subscribe to the petition, then each such person's participation on the petition or abstinence therefrom would be accurately reflected in the determination of representative participation by *persons* affected.

■ Although, as indicated, we cannot agree with petitioner's first contention we do agree with his next contention, that the board's refusal to consider his request for further time to obtain additional signatures was improper. Respondents' answer to this contention is that an extension of time could only be granted under one of the following circumstances: (a) at the end of a statutory 120-day circulation period or any previously granted 30-day extension thereof; (b) at the time the petition is filed and (c) at the time the clerk reports that the petition is not sufficient. Concededly the flat prohibition contained in section 34307.1, on which the board relied in denying petitioner's request, should be construed with section 34303 which provides for the granting of additional time by the board.

It is petitioner's argument that the interpretation urged by the board would impose upon a petitioner the burden of anticipating the clerk's determinations as to the sufficiency of the signatures and would compel such petitioner, in effect, to duplicate the clerk's functions in searching records, making calculations and determinations of the exact number of qualified signers and property valuations. Moreover, should the

clerk submit his report to the board after the filing of an application for extension then still pending, the board would not have the power to grant the prior application if we construe the statute as urged by the board. Finally, petitioner may be required, as in the instant case, to construe confusing statutory provisions at his peril. Should he err or be given inadequate or incorrect information as to the number of co-owners of even one parcel of land very serious consequences could result, as section 34307.1 further forbids him from instituting a new incorporation for a period of two years.

We were aided in resolving the question of the relationship between the provisions of section 34303 and 34307.1 by the fact that the authority given to the board to grant extensions of time was provided by amendment to section 34303 (Stats. 1963, ch. 1281, p. 2807) subsequently to the enactment of section 34307.1 (Stats. 1957, ch. 2363, p. 4096; amended by Stats. 1961, ch. 1988, p. 4180). In view of the obvious liberalizing effect of the Legislature's amendment to section 34303 in 1963, and the unduly harsh treatment impressed upon a petitioner who has made a good faith but insufficient effort to comply with the statutory provisions, we are persuaded to the conclusion that the granting of a meritorious application for additional time, to one in petitioner's situation, is within the legislative intent of section 34303.

Necessarily, therefore, contentions that in the instant case petitioner failed to take timely action in that he might have ascertained the clerk's conclusions prior to the formal making of her report, and thus made immediate application for additional time, should not detract from the board's authority to consider the application. Such contentions, if of substance, may more properly be considered by the board as going to the merits of the application rather than to its authority to consider the matter.

In view of the foregoing it is apparent that while the instant petition was insufficient in that it was not signed by 25 per cent of the qualified signers in the proposed city, the board of supervisors was nevertheless authorized and required to consider on its merits the request for an extension of time.

Let a peremptory writ of mandate issue directing respondents to consider and determine on its merits petitioner's application for further time within which to seek to obtain additional signatures.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J. concurred.