[L. A. No. 29306.   In Bank.   May 25, 1967.]

BUEL F. ENYEART et al., Plaintiffs and Appellants, v. BOARD OF SUPERVISORS OF THE COUNTY OF ORANGE et al., Defendants and Respondents.

---

*Assigned by the Chairman of the Judicial Council.

Rutan & Tucker, Homer L. McCormick, Jr., and James E. Erickson for Plaintiffs and Appellants.

James R. Christiansen, City Attorney (Carpinteria), and Donald Olson, City Attorney (Culver City), as Amici Curiae on behalf of Plaintiffs and Appellants.

Adrian Kuyper, County Counsel, and Ronald Steelman, Deputy County Counsel, for Defendants and Respondents.

Harold W. Kennedy, County Counsel (Los Angeles), Gordon W. Treharne, Deputy County Counsel, McCutchen, Black, Verleger & Shea, Philip K. Verleger and Harry C. Harper as Amici Curiae on behalf of Defendants and Respondents.

BURKE, J.—This mandamus proceeding presents the question of whether respondent Board of Supervisors of Orange County correctly determined that written protests against the proposed incorporation of a new city represented 51 percent of properly includible assessed valuation and so required termination of the incorporation proceeding as provided by section 34311 of the Government Code.[1] We have concluded

---

[1] All section references are to the Government Code unless otherwise stated.

that although as held by the trial court protests by owners of oil and gas leases may be included, sufficient protests were not timely filed here to warrant the termination. Accordingly the trial court's judgment denying the writ must be reversed.

Plaintiffs properly initiated a proceeding for the incorporation of a city by filing a petition with the board (§ 34303)[2] carrying the signatures of qualified signers.[3] The board set September 18, 1963, as the date of the first hearing on the petition (§ 34310), and to consider protests filed pursuant to section 34311.[4] At the September 18 hearing an attorney who represented the committee opposed to incorporation stated to the board that his committee had obtained protests of owners representing $806,270 of the assessed value of land and that $1,617,394 was 51 percent of the assessed valuation of all land within the proposed city. At his request, the hearing was continued to October 24, 1963.

At the October 24 hearing the county assessor reported to the board that the assessed valuations of land and of sepa-

---

[2]The sufficiency of the petition is not here challenged. Plaintiffs allege and defendants do not deny that according to the county assessor's report to the board the total assessed value of land within the proposed city limits was $3,290,970 and the total assessed value of land represented by qualified signers of the petition was $1,432,140, comprising some 43 percent representation; further, of the 1,780 qualified signers, 954 signed the petition. Signatures to the petition thus met both prerequisites of section 34303: At least 25 percent of the qualified signers counted on the basis of the number of *persons* so qualified, *and* at least 25 percent of the *assessed value* of the land. (See *Ames* v. *Board of Supervisors* (1965) 62 Cal.2d 320, 322-323 [1] [42 Cal.Rptr. 216, 398 P.2d 408].)

[3]"Qualified signer" is defined by section 34301 as "the owner of an *interest in fee*, whether community or otherwise, of *land* situated within the limits of the city proposed to be incorporated, except [that if] such *land* is subject to a written agreement to buy, . . . the purchaser or any one or more of the purchasers under such written agreement shall be deemed the 'qualified signer.' . . ." (Italics added.)

[4]Section 34311 was amended, effective September 20, 1963; i.e., two days after the first board hearing. (Stats. 1963, ch. 1879, p. 3864.) In the following quotation of the pertinent parts of the section, language deleted by the 1963 amendment is shown as stricken out (thus: ——), language changed or added by that amendment is in brackets (thus: []), and all emphasis has been added:

"The board shall hold a hearing at the time fixed, and may adjourn the hearing from time to time, for periods not to exceed two months in all. [If at the time set for the first hearing, there are insufficient written protests filed with the board to terminate further proceedings, the meeting shall be recessed not less than 14 days, and supplemental protests may be filed within 10 days after the first hearing.]

"If upon the final hearing the board . . . finds and determines that written protests to the proposed incorporation have been filed with the board, signed by the~~ owners of~~ *land* ~~within the boundaries of the pro-~~

rately assessed mineral rights within the proposed city totaled $4,121,670, that signed protests represented valuations totaling $2,370,850, and that there was thus a 57.5 percent protest.[5] Plaintiffs questioned the validity of certain of the protests and at their request for an opportunity to present further evidence, the hearing was continued to October 30, 1963.

At the final hearing, held October 30, the assessor rendered a report to the board supplementing his October 24 report and making adjustments as follows: The total value of mineral rights represented by protests was adjusted at $764,080, because of duplications of protests and of additional protests filed after October 24. After protests made by persons who no longer owned the land at the time of signing had been disallowed, the value of the land and separately assessed mineral rights represented by protests was reported to be $2,420,410, equaling 58.72 percent of the total assessed valuation of land and mineral rights ($4,121,670) within the proposed city limits.

Plaintiffs presented evidence to the board in the form of declarations made under penalty of perjury that certain parcels were owned by the declarants instead of by persons who signed protests based upon claimed ownership of such parcels. Plaintiffs also represented to the board that certain other parcels had not been owned by persons signing protests, and that plaintiffs had found deed records of such ownership changes in the office of the county recorder and had made

posed incorporation [qualified signers] representing 51 percent of the total assessed valuation of the *land* within said boundaries [the boundaries of the proposed incorporation], the jurisdiction of the board of supervisors shall cease; . . . and no further petition for the incorporation of any of the same *territory* shall be initiated for one year after the date of such determination.

"For the purposes of this section written requests for exclusion shall be deemed to be protests."

The following paragraphs were also *added* to section 34311 by the 1963 amendment: "Except to the extent that proof to the contrary has been submitted to it, the board . . . in ascertaining whether protests . . . have been signed by qualified signers may assume that the assessees on the last equalized assessment roll of the county are the qualified signers as herein defined.

"Proof of qualifications as a signer shall be in writing, filed with the protest or request for exclusion, and, except for copies of instruments of title, shall be verified."

[5]The assessor's October 24 report gave this breakdown:

Assessed valuations: Land, $3,337,770;
mineral rights, 783,900.
Protest valuations: Land, $1,345,640 and $259,580;
mineral rights, 765,630.

notes of the book and page numbers where recorded. The board received all such information without accepting the validity of the offered hearsay as to the existence of deeds from persons signing protests before they signed. Plaintiffs requested the board to have the assessor follow up on such information. Additionally, plaintiffs declared that their inspection of county records disclosed that at least a substantial portion of the mineral rights included in the assessor's reports were oil and gas leases and should be excluded from consideration.

The county counsel advised the board that it was not required to make an independent investigation of reported irregularities in the figures presented by the assessor, that that official's report might be accepted in the absence of evidence in the form of affidavit or under penalty of perjury by the true owner of the land, and that the mineral rights, including oil and gas leases, must be considered as ''land'' for the purposes of the protests. Based upon that advice the board determined that there was more than 51 percent protest and terminated the incorporation proceedings. This mandamus proceeding followed.

The trial court heard the matter on the record of the proceedings before the board, refused to permit plaintiffs to introduce additional evidence, determined that the board had properly accepted protests after the first (September 18) hearing including protests ''from owners of mineral interests of which substantially all . . . were owners of oil and gas interests, and if these mineral interests were improperly accepted the protests would not represent 51%,'' and denied the writ.

Plaintiffs advance various grounds for reversal. The questions presented include the bearing of statutory amendments which became effective two days after the first hearing.

### Oil And Gas Interests.

Plaintiffs urge that the trial court erred in concluding that protests from owners of oil and gas interests may properly be accepted in an incorporation proceeding. Resolution of the issue turns upon the meaning to be attributed to the word ''land'' as used in the pertinent statutes.

As noted in *Delaney* v. *Lowery* (1944) 25 Cal.2d 561, 571 [154 P.2d 674], ''The word land has various meanings both broad and narrow.'' It was there held that under California Constitution, article XIII, section 9a, which provides that

taxes levied upon personal property and upon possessory interests "which are not a lien upon *land* sufficient in value to secure their payment, shall be based" (italics added) upon the previous year's rates, the word land is to be given a broad meaning so as to include written leases whereby the owner-lessor of land conveys or grants to the lessee the exclusive right to drill for, produce and have the petroleum products under such land for a fixed time or so long as the products may be produced. Accordingly, the court held valid the provision of section 107 of the Revenue and Taxation Code that "Leasehold estates for the production of gas, petroleum, and other hydrocarbon substances from beneath the surface of the earth, and other rights relating to such substances which constitute incorporeal hereditaments or profits a prendre, are sufficient security for the payment of taxes levied thereon . . . [and] shall be placed on the secured roll." The opinion further notes (p. 570 of 25 Cal.2d) that in this state an oil and gas lease which provides that in addition to the fixed term the lease is to continue so long thereafter as oil or gas is produced in paying quantities is properly classified as a freehold estate in the nature of a qualified or determinable fee and is real property. (See also *Dabney* v. *Edwards* (1935) 5 Cal.2d 1, 11-12 [5], 17 [9] [53 P.2d 962, 103 A.L.R. 822], in which the court points out that such a production lease of unlimited duration constitutes an estate in real property in the nature of a profit a prendre which is an incorporeal hereditament, and an *estate in fee*.)

The word land as used in the incorporation statutes now before us has also been construed. In *Krouser* v. *County of San Bernardino* (1947) 29 Cal.2d 766, 771-772 [178 P.2d 441], it was held that in computing whether those signing the petition for incorporation represented at least "25 percent of the assessed value of the *land*" (§ 34303, formerly § 2 of the Municipal Corporations Act: italics added), the definition found in section 659 of the Civil Code should be followed,[6] and that accordingly improvements are not included.

---

[6]Section 659 of the Civil Code was amended effective September 20, 1963; i.e., two days after the first hearing in the present case. It had not previously been amended since its enactment in 1872. In the following quotation of section 659, language deleted by the 1963 amendment is shown as stricken .out, and language added by that amendment is in brackets:

"Land is the ~~solid~~ material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance, [and includes free or occupied space for an indefinite distance upwards as well as downwards, subject to limitations upon the use of airspace imposed, and rights in the use of airspace granted by law.]"

The definition of section 659 of the Civil Code has likewise been held applicable to the word land, and improvements thus excluded, in applying the requirement of section 35305 that a petition for annexation of uninhabited territory be signed by owners of not less than one-fourth "of the land in the territory by area, and by assessed value." However, "value of the territory" as used in section 35313 providing for termination of the annexation proceedings upon protest by owners of one-half of such value, was held to include land *and* improvements thereon even before section 35313 was amended in 1955 to expressly include improvements in the statutory definition.[7] (*People* v. *City of Palm Springs* (1958) 51 Cal.2d 38, 44-45 [7-9] [331 P.2d 4].)

Section 35313 also provides that "The value given such property for protest purposes shall be that shown on the last equalized assessment roll. . . ." In *People* ex rel. *Mosk* v. *City of Santa Barbara* (1961) 192 Cal.App.2d 342, 348-349 [13 Cal.Rptr. 423], it was held that "underground storage and mineral property," which had been classified by the assessor as land and not separately assessed, was properly included in the annexation protests, and (pp. 354-355) that the city council may not "go behind the face of the assessment roll to determine" the nature of the mineral rights as between oil and gas and other minerals in an attempt to classify only a portion thereof as "land."[8]

■ Defendants and supporting amicus curiae contend that the board and the trial court correctly held that oil and gas leases are properly includible in determining the total assessed value of the land within the boundaries of a proposed new city for both petition and protest purposes, and in determining sufficiency of the petition and of the protests. They emphasize that the following 1963 amendments support their position: (1) Civil Code section 659 was amended to delete the word "solid" from the definition of land (*ante*, fn. 6), and (2) section 34311 was amended with the effect of making an "owner of an interest in fee" a "qualified signer" for

---

[7]Section 35313: ". . . (c) As used in this article, 'value of the territory' means the value of land and improvements thereon. . . ." (Definition added Stats. 1955, ch. 1948, p. 3580.)

[8]In *Santa Barbara* only that portion of the property which was located in the territory proposed to be annexed was actually taken into account for protest purposes (p. 345, fn. 1), an apportionment approach approved and held mandatory in *Forest Lawn Co.* v. *City Council* (1963) 60 Cal.2d 516, 518-523 [35 Cal.Rptr. 65, 386 P.2d 665].

protest purposes.[9] (*Ante,* fn. 4.) We are persuaded that this position is sound, and that by the amendments the Legislature has effectively removed any doubt that might otherwise arise as to whether all mineral rights, including oil and gas interests, should be classified as "land" for the purposes here involved. ▮ The Legislature is presumed to know of existing domestic judicial decisions and to have them in mind when amending statutes which the courts have construed. (See *Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 200 [4] [288 P.2d 12, 289 P.2d 242]; *Williams* v. *Industrial Acc. Com.* (1966) 64 Cal.2d 618, 620 [2] [51 Cal.Rptr. 277, 414 P.2d 405]; *McColgan* v. *Jones, Hubbard, etc., Inc.* (1938) 11 Cal.2d 243, 247 [3] [78 P.2d 1010]; *Estate of Moffitt* (1908) 153 Cal. 359, 361 [95 P. 653, 1025, 20 L.R.A. N.S. 207].)

### *Time Limit For Filing Protests.*

Until the 1963 amendment section 34311 contained no provision for the filing of supplemental protests after the first hearing, but did specify (first paragraph) that "The board shall hold a hearing at the time fixed, and may adjourn the hearing from time to time, for periods not to exceed two months in all."[10] In 1963 the following sentence was added: "If at the time set for the first hearing, there are insufficient written protests filed with the board to terminate further proceedings, the meeting shall be recessed not less than 14 days, and supplemental protests may be filed within 10 days after the first hearing." (*Ante,* fn. 4.)

The first board hearing in this case was held on Wednesday, September 18, 1963. At that time there were insufficient protests to terminate further proceedings and the attorney for the protest committee requested an adjournment to permit the committee to seek additional protests. The attorney specifically mentioned the 1963 amendment to section 34311 [11] as

---

[9]As noted (*ante,* fn. 3), section 34301 defines "qualified signer" as "the owner of an interest in fee." The 1963 amendment to section 34311 brought that section into conformity with section 34303, which refers to "qualified signer" for purposes of the petition for incorporation. (See *Dabney* v. *Edwards, supra,* 5 Cal.2d 1, 11-12, 17.)

[10]At all times since amended in 1957 section 34310 has required that notice of the hearing be published at least two weeks before the hearing and state, among other things, "(d) The time and place for a hearing on the petition; (e) That written requests for exclusion [which section 34311 states are deemed to be protests], and all persons wishing to be heard on the matter of the size and shape and establishment of the boundaries of the proposed city, will be heard and considered."

[11]The attorney stated to the board as follows: County counsel "has stated that you have the authority under Section 34311 . . . to adjourn

indicating that further time should be granted. He urged that 60 days be allowed notwithstanding his reference to the 10-day limit expressly imposed by the amendment. The proponents of incorporation requested that "this hearing be closed as to the receiving of additional protests." County counsel expressed the view that protests could be filed "right up to the time of the final hearing," and the board continued the hearing to October 24, 1963.

At the October 24 hearing the attorney for the protest committee declared that "We had some $800,000 evaluation filed last night and this morning," and as already related the assessor reported that the total protest had reached 57.5 percent. If, however, the $800,000 to which the protest attorney referred be disallowed because filed more than three weeks too late under the 1963 amendment, the total protest will be reduced to substantially less than 51 percent and termination of the incorporation proceeding was in error.

As already noted (*ante,* fn. 4), the 1963 amendment became effective two days after the first (September 18) hearing before the board.[12] We are persuaded that it is appropriate and in accord with the intent of the Legislature that the procedural and time limitations thereof be applied in this case. (See *Forest Lawn Co.* v. *City Council* (1966) 244 Cal.App.2d 343, 347 [53 Cal.Rptr. 452]; cf. *McBarron* v. *Kimball* (1962) 210 Cal.App.2d 218 [26 Cal.Rptr. 379].) Furthermore, no unfairness to the protesting group appears. Before the amendment to section 34311 no permission to file protests after the first hearing was to be found in the statutes. After the amendment supplemental protests clearly were

this meeting for a period up to two months. And I might also call your attention to the amendment to 34311 which becomes effective this Friday which states that if insufficient protests are filed at this protest hearing, that the Board has a mandatory duty to recess this meeting for at least 14 days. Now, this Section is not effective yet, but I think it is indicative of the feeling of the California Legislature. And so I do feel that in view of the shortness of time that the committee opposed . . . has had to work, and . . . in all fairness to them, they should have a *two month's period* in which *to file additional protests* . . . .

"I would again draw your attention to the recent amendment to the code section which will become effective on the *19th* [actually, on September 20], which states that it is mandatory and that the Board . . . if there are not sufficient protests filed, to extend the time and to recess to allow more protests in for at least a 14-day period, and *ten days within that 14-day period to receive more protests.* So I think that is . . . very good evidence of what the California Legislature feels to be a prudent policy in situations of this type." (Italics added.)

[12]The record discloses that the effect of the 1963 amendment was argued before the trial court, as well as before the board.

permitted but only if filed within the ten-day limit. The amendment also provides that the hearing be recessed "not less than 14 days," thus allowing at least four days to examine the validity of the protests before resumption of the hearing. That such an examination is contemplated is disclosed by the further 1963 addition to section 34311 (*ante*, fn. 4) of the provision that "Except to the extent that proof to the contrary has been submitted" the board "may assume that the assessees on the last equalized assessment roll of the county are the qualified signers as herein defined." The amendment serves to clarify and make more orderly the procedural aspects of incorporation and protest hearings, it became effective only two days after the first hearing before the board, and the protesting group have been accorded its full benefits but must also be subject to its limitations. It follows that the $800,000 protest valuation filed some five weeks after the first hearing came too late and should have been disallowed, that the incorporation proceeding should not have been terminated, and that the judgment must be reversed and the trial court directed to issue a writ of mandate accordingly. This holding renders it unnecessary to consider other attacks made by plaintiffs on the proceedings below.

We note that section 34311 permits the board to adjourn the incorporation hearing from time to time, not to exceed two months after the first hearing. Although the two months have long since expired, an additional period of 60 days after issuance of the writ should be allowed for the board to hold a final hearing, define the boundaries of the proposed city (§ 34315) and perform its other duties in the premises.

The judgment is reversed, and the matter is remanded to the superior court with directions that it issue a writ of mandate in conformance with this opinion.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.