[Civ. No. 39331. Second Dist., Div. Two. Feb. 9, 1972.]

PROPERTY RESEARCH FINANCIAL CORPORATION, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; MACCO CORPORATION et al., Real Parties in Interest.

414

COUNSEL

Greenberg, Bernhard, Weiss & Karma, Maxwell E. Greenberg, Herbert A. Bernhard and Dennis E. Golob for Petitioner.

No appearance for Respondent.

Tuttle & Taylor, Eli Chernow, C. Stephen Howard and Charles B. Rosenberg for Real Parties in Interest.

## OPINION

**FLEMING, J.**—Petition for writ of prohibition or mandate to require the Superior Court of Los Angeles County to vacate its order quashing a prejudgment attachment under subdivision 2 of section 537 of the Code of Civil Procedure levied against real property of a nonresident corporate defendant. In quashing petitioner's attachment under the authority of *Randone* v. *Appellate Department*, 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13], respondent court concluded that subdivision 2 of section 537 is equally unconstitutional with subdivision 1 of that section. We issued an alternative writ and heard argument in this and a companion case having two of the same real parties in interest: *Ortleb* v. *Superior Court* (2d Civ. No. 39345) *post*, p. 424 [100 Cal.Rptr. 471].

Here, petitioner filed suit in January 1971 against real parties in interest and two other corporations for the balance of $650,000 assertedly due on a promissory note. Initially, it filed its declaration of attachment under subdivision 1 of section 537 and posted an attachment bond of $325,000 as required by section 539. After the *Randone* decision in August 1971, petitioner filed a second declaration, this time for attachment under subdivision 2 against the real parties in interest as nonresidents. Macco Corporation (Macco) is a Delaware corporation, and GSC Development Corp. and GSC Development Corporation (Development) are Texas corporations. A writ of attachment was issued under which unimproved real properties owned by Development and others were levied upon. Thereafter, respondent court ordered the writ and levy quashed, but stayed the operation of its order so that petitioner could apply to this court for an extraordinary writ, meanwhile allowing a pending sale of the property and ordering the proceeds of the sale, $642,000, held in escrow.

Petitioner contends respondent court exceeded its jurisdiction in quashing the attachment as unconstitutional, and it asserts that unless the attachment is reinstated, real parties in interest will dissipate or remove the funds, and assets will no longer be available in California to satisfy a judgment. Development filed an answer and a demurrer, of which we consider only the demurrer, since our determination of the legal issue makes irrelevant the issues of fact raised by the answer. Essentially, the demurrer argues that California's foreign attachment statute violates due process of law.

### California Statutes on Attachment Before Judgment

Pre-judgment attachment in California, governed by sections 537 through 561 of the Code of Civil Procedure, is authorized for use in the cases listed in section 537.[1] Plaintiff is required to post an undertaking equal to half the amount of his claim in order to cover possible damages from unlawful attachment. (§ 539.) Defendant may apply to the court to release the attachment upon posting a similar undertaking to secure plaintiff's recovery (§§ 554 and 555), and he may obtain a hearing "at any time" on "reasonable" notice to challenge the regularity and propriety of the issuance of the writ (§ 556). The latter procedure has been supplemented by judicially established hearings, which permit a challenge to the legality of the *levy* under a valid writ, e.g., one made on property claimed to be exempt. (*Holmes* v. *Marshall* (1905) 145 Cal. 777, 783 [79 P. 534]; *Coon* v. *Biscailuz* (1934) 1 Cal.App.2d 346, 348 [36 P.2d 430].)

### Ownbey, Sniadach and Randone

The principal United States Supreme Court decision on the validity of foreign attachment under the due process clause is *Ownbey* v. *Morgan* (1921) 256 U.S. 94 [65 L.Ed. 837, 41 S.Ct. 433, 17 A.L.R. 873], a case in which the executors of J. P. Morgan filed suit for $200,000 in Delaware against a Colorado resident and attached his shares in a Delaware corporation, shares which under Delaware law had a situs in the state for purposes of attachment. Delaware had no remedy of general attachment before judgment, and its remedy of foreign attachment was more severe on defendants than the present California statute in two respects: (a) plaintiff was not required to post any bond; and (b) defendant was required to post substitute security equal to the value of the property attached before he could appear generally and answer on the merits. Ownbey claimed that the

---

[1] "§ 537. The plaintiff, at the time of issuing the summons, or at any time afterward, may have the property of the defendant attached, except earnings of the defendant as provided in Section 690.6, as security for the satisfaction of any judgment that may be recovered, unless the defendant gives security to pay such judgment, as in this chapter provided, in the following cases:

"1. In an action upon a contract, express or implied, for the direct payment of money, (a) where the contract is made or is payable in this state; or (b) where the contract is made outside this state and is not payable in this state and the amount of the claim based upon such contract exceeds five thousand dollars ($5,000); and where the contract described in either (a) or (b) is not secured by any mortgage, deed of trust, or lien upon real or personal property, or any pledge of personal property, or, if originally so secured, such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless. . . .

"2. In an action upon a contract, express or implied, *against a defendant not residing in this state,* or who has departed from the state, or who cannot after due diligence be found within the state, or who conceals himself to avoid service of summons. (Italics added.)

"3.  .    .    .    .    .    .    .    .    .    .    .    .    .    .    ."

attached shares were not available for purposes of collateral because their market value had been temporarily destroyed by a receivership, that he had no other property to use as collateral for the necessary bond, and therefore the statutory requirement that he post security as a condition of his right to defend the action deprived him of property without due process of law.

In rejecting these claims the Supreme Court relied mainly upon the ancient lineage of foreign attachment, which it traced back through early colonial statutes to that part of the law merchant known as the Custom of London and which it identified as a means originally used to acquire jurisdiction over a foreign defendant. The court pointed out that foreign attachment developed from a seizure of defendant's chattels to compel his appearance. The action was quasi in rem. If defendant appeared his chattels were restored to him; if he did not appear they were forfeited. On the defendant's personal appearance the action became one in personam, and the body of the defendant then substituted as security in place of his chattels. Over time, however, the use of body attachment and body execution for debt declined, with the net result that the release of the lien on the attached property on defendant's appearance might leave plaintiff with nothing by way of security. Hence the requirement for substitute security developed as a reasonable means to preserve plaintiff's security position in the litigation and to compensate him for the release of the attached property on defendant's personal appearance. The Supreme Court, in affirming the requirement of substitute security as a condition of defendant's personal appearance to contest the merits, said: "A procedure customarily employed, long before the Revolution, in the commercial metropolis of England, and generally adopted by the states as suited to their circumstances and needs, cannot be deemed inconsistent with due process of law, even if it be taken with its ancient incident of requiring security from a defendant who, after seizure of his property, comes within the jurisdiction and seeks to interpose a defense." (256 U.S. at p. 111 [65 L.Ed. at p. 846].) In holding that Delaware's foreign attachment procedure complied with due process of law, the Supreme Court, most importantly for our purposes, implicitly recognized that the collectibility of plaintiff's judgment was the primary purpose to be served by foreign attachment, and it termed the traditional purpose of obtaining jurisdiction *quasi in rem* an "incident object" of the statutes authorizing foreign attachment. (P. 107 [65 L.Ed. p. 844].)

In *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820], the United States Supreme Court held that Wisconsin's wage garnishment statute violated due process for its overbreadth in allowing summary attachment on defendants without providing safeguards against economic hardship. The use of such statutes, said the court, "may as a practical matter drive a wage-earning family to the wall." (395 U.S. at

pp. 341-342 [23 L.Ed.2d at p. 354].) The court referred to *Ownbey* in the following manner: "Such summary procedure may well meet the requirements of due process in *extraordinary situations*. Cf. . . . *Ownbey* v. *Morgan*, . . . But in the present case no situation requiring *special protection to a state or creditor interest* is presented by the facts; nor is the Wisconsin statute narrowly drawn to meet any such unusual condition. Petitioner was a resident of this Wisconsin community and *in personam* jurisdiction is readily obtainable." (395 U.S. at p. 339 [23 L.Ed.2d at p. 352]; italics added.)

In *Randone* v. *Appellate Department*, 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13], the California Supreme Court considered the validity of an attachment under subdivision 1 of a small bank account on which defendants relied for their necessities of day-to-day living. Applying the rationale of *Sniadach*, the court held subdivision 1 unconstitutional in its entirety and on its face for its overbreadth in failing to distinguish among various types of property whose attachment entails varying degrees of hardship. While the court limited its holding to subdivision 1, its opinion has since been interpreted to cast doubt on section 537 in its entirety as violative of due process of law.

Real parties in interest raise three issues in connection with the constitutionality of subdivision 2. (1) Is the nonresidence of a defendant a sufficient extraordinary factor "requiring special protection to a state or creditor interest" to justify summary attachment, i.e. before notice to defendant and provision for hearing? (2) Should we interpret the phrase "not residing in this state" as not including foreign corporations whose principal place of business is located in California? (3) Would validation of attachment against nonresidents but not residents deprive nonresidents of the equal protection of the laws?

*Nonresidence as a Justification for Summary Attachment*

■ Development contends that the only state or creditor interests served by subdivison 2 are (a) opportunity for a creditor to obtain jurisdiction quasi in rem, and (b) prevention of flight or concealment of assets. It argues that these objectives may be achieved by limiting the use of subdivision 2 of the attachment statute to three specific situations authorized in the subdivision—where a defendant has departed the state, where he cannot be found within the state, and where he has concealed himself to avoid service—and holding that the remaining general use of subdivision 2, attachment based on nonresidence alone, lacks sufficient justification to satisfy due process of law.

While the substance of both foreign attachment and general attachment was enacted in California law during the first year of statehood (Stats. 1851, ch. 5, § 120, p. 68), only foreign attachment under subdivision 2 is rooted in the tradition of the law merchant, the common law, and admiralty law.[2] This historical distinction is reflected in the statutes of the states; for all 50 states recognize foreign attachment, whereas only 15 (including California, until *Randone*) provide for general pre-judgment attachment against resident debtors without proof of special circumstances such as imminent flight from the state, concealment of assets, and the like.[3]

Although modern long-arm statutes (e.g., Code Civ. Proc., § 410.10 et seq. (1969)) have substantially reduced the need for foreign attachment as a means to obtain jurisdiction over the debtor and his property, the increased mobility of persons and property across state lines has transformed what was originally an incidental benefit of attachment into what the *Ownbey* court implied had now become its primary purpose—to insure the collectibility of plaintiff's judgment. In our view the benefit to creditors from the use of foreign attachment is very great while the detriment to nonresident debtors remains relatively small.

The creditor's need to safeguard the collectibility of a judgment is substantially greater when the debtor is a nonresident than when he is a resident, for a nonresident has contacts and roots outside the state which make it far more likely he will be willing and able to transfer assets outside the state to defeat his creditor's recovery than is true in the case of a resident debtor. Prior notice and hearing inevitably provide the non-resident debtor with opportunity to defeat the primary purpose of foreign attachment by transferring his assets to his home state before the desired attachment can take effect. In summary attachment against nonresidents the element of surprise is vital to the effectiveness of the procedure and indispensable to the state's interest in making its process locally effective. The principle is much the same as that embodied in the statutes allowing summary filing of a lis pendens at the commencement of property litigation (Code Civ. Proc., § 409): the subject matter of the litigation should be preserved until a hearing is held on the merits in order to make the judgment of the court practically enforceable. Although ownership of the attached property may not itself be at issue, its preservation against willful or negligent dissipation or its sale to innocent purchasers is often necessary if the court is to do full

---

[2]See Glenn, Fraudulent Conveyances and Preferences (1940) §§ 37-38; Benedict on Admiralty (6th ed. 1940) §§ 288, 290; *Manro* v. *Almeida* (1825) 23 U.S. (10 Wheat.) 473 [6 L.Ed. 369].

[3]All six New England states, plus New Jersey, Alabama, Arizona, Nevada, California, Oregon, Idaho, Alaska, and Hawaii. (From 5 Martindale-Hubbell Law Directory (1971 ed.) Law Digests.)

justice to a plaintiff with a valid claim. An attaching creditor, therefore, has a substantial and legitimate claim to due process of law in the protection and collection of what is owed him, and in that sense the creditor's interest in foreign attachment, rooted as it is in tradition centuries old, presents a competing claim to due process of law.

In balancing the creditor's claim to *effective* process against the nonresident debtor's claim to *due* process, i.e., notice and hearing prior to attachment, we note that attachment of a nonresident's property will not ordinarily involve his necessities for day-to-day living, and in this respect it contrasts with the garnishment of wages in *Sniadach* and the attachment of the small bank account in *Randone*. The court in *Randone* took account of this difference when it commented on the historical setting of *Ownbey*: "Moreover, because the assets subject to attachment consisted of only those items located outside the debtor's home state, there was less possibility that such property would include 'necessities' required for day-to-day living; consequently the resulting hardship to the debtor would frequently be minimal." (P. 554.)

Three federal district courts since *Sniadach* have upheld the validity of foreign attachment. In *Tucker* v. *Burton* (D.C. 1970) 319 F.Supp. 567, the court held that nonresidence of the debtor-defendants under the District of Columbia's wage garnishmnet law was an "unusual condition" within the meaning of *Sniadach*. The statute required plaintiff to post bond in double the amount of his claim, and gave the debtor the right to a hearing on three days' notice at which he could challenge the garnishment. The grounds of attack on the attachment included a showing that plaintiff had no "just right to recover" on his claim. In view of those safeguards the court concluded the statute was sufficiently narrow to satisfy the requirements of due process of law. In *Lebowitz* v. *Forbes Leasing and Finance Corp.* (E.D.Pa. 1971) 326 F.Supp. 1335, the district court refused to quash an attachment against a foreign corporation under a Pennsylvania law which did not require an attaching plaintiff to post a bond. The court reviewed the history of foreign attachment and commented on its present importance as insurance of the collectibility of plaintiff's judgment. In *Black Watch Farms, Inc.* v. *Dick* (D.Conn. 1971) 323 F. Supp. 100, the district court upheld the constitutionality of Connecticut's foreign attachment statute, holding that the subsequent plenary hearing in the main action satisfied the requirement of due process of law for pre-judgment attachment of real property. Said the court: "The defendant is neither deprived of the use or enjoyment of the property pending a trial on the merits nor is his livelihood threatened by the deprivation of the right to freely transfer the realty . . . . [Par.] A real property attachment is not a final proceeding, nor is it

unduly harsh. Therefore, there is no necessity for prior notice or hearing since due process is satisfied by the subsequent plenary hearing in the main action." (P. 102.)

■■■■■ We conclude that a "situation requiring special protection to a state or creditor interest" (*Sniadach* v. *Family Finance Corp.*, p. 339 [23 L.Ed.2d p. 352]) is present in nonresident attachment, and that consequently the statute authorizing its use is constitutionally valid.[4]

## Foreign Corporations as "Not Residing in this State"

■ Under California law a corporation incorporated in another state has long been considered a "defendant not residing in this state" within the meaning of subdivision 2, regardless of the amount of business it transacts in California. (*Title Insurance and Trust Co.* v. *California Development Co.* (1915) 171 Cal. 173, 218 [152 P. 542], and cases there cited.) Development, incorporated in Texas but with its principal office in California, contends we should avoid the issue of the constitutionality of subdivision 2 as applied to it by redefining the phrase "not residing in this state" to exclude foreign corporations whose principal place of business is located in California, and thereby uphold the order quashing the attachment.

We disagree. ■ In interpreting a statute of uncertain wording we presume that the Legislature is familiar with prevailing judicial interpretation of the wording and that when it has amended the statute without changing the wording it has tacitly approved prevailing interpretation. (*Enyeart* v. *Board of Supervisors*, 66 Cal.2d 728, 735 [58 Cal.Rptr. 733, 427 P.2d 509].) ■ Subdivision 2 was amended in 1927 without changing the phrase in question (Stats. 1927, ch. 524, p. 875, § 1), and subdivision 3, which employs the identical wording for tort actions, has

---

[4]Counsel for real parties in interest argue that even if nonresidence of the defendant whose property is attached justifies summary attachment, subdivision 2 cannot be upheld where there are multiple defendants, because it is not limited to attachment of property of the *nonresident* defendant or defendants. They maintain that this results from the wording which allows attachment "In an action . . . *against a defendant* not residing in this state . . ." rather than allowing attachment of property *belonging* to such a defendant.

It is true that the preamble to section 537 does not seem to contemplate multiple defendants: "The plaintiff . . . may have *the property of the defendant* attached . . . unless *the defendant* gives security. . . ." (Italics added.) We believe, however, that the context clearly indicates that "the defendant" refers to a defendant who qualifies under one of the subdivisions following, and that the qualifying phrase in subdivision 2 "not residing in this state" must be taken to likewise qualify "the defendant" in the preamble.

been amended three times since 1915 without change in the phrase (*Idem.* plus Stats. 1957, ch. 1660, p. 3040, § 1; Stats. 1963, ch. 50, p. 676, § 1).

Furthermore, sound procedural practicality lies behind the established interpretation. A fact which a plaintiff must establish to invoke summary attachment should be clear-cut and readily ascertainable in order not to overload the remedy with the burden of a difficult determination of fact. Whether a foreign corporation doing business in several states has its principal place of business in California might well impose such a burden. Redefinition of these and other policy questions involving the use of provisional remedies is something better handled by the Legislature than by the courts. (*International News Service* v. *Associated Press* (1918) 248 U.S. 215, 248, 262-263 [63 L.Ed. 211, 224, 230-231, 39 S.Ct. 68, 2 A.L.R. 293] (Brandeis, J., dissenting opinion).)[5]

*Equal Protection of the Laws for Nonresidents*

█ Development contends that "to uphold the non-residency provisions of Code of Civil Procedure section 537(2) in the face of the invalidity of Code of Civil Procedure section 537(1) would be to deny equal protection of the law to nonresidents." The discrimination against nonresidency resulting from *Randone* places California with the 35 states whose laws provide for foreign attachment but not general attachment. Development cites no case holding that the foreign attachment laws of those states violate the equal protection clause, nor are we aware of any such holding. To the contrary, in *Central Loan & Trust Co.* v. *Campbell* (1899) 173 U.S. 84, 97-99 [43 L.Ed. 623, 627-628, 19 S.Ct. 346], the United States Supreme Court specifically upheld, as against the claim of a denial of the equal protection of the laws, an attachment statute which required a bond to attach property of a resident defendant but no bond to attach property of a nonresident. The court ruled that the difference between residents and nonresidents justified their different classification for purposes of attachment. The distinction between a resident and a nonresident is so great, said the court, that the propriety of differentiation for attachment purposes is "obvious." We hold the special needs served by foreign attachment justify discrimination between resident and nonresident defendants.

---

[5]It is noteworthy that the 1958 amendment governing federal diversity jurisdiction for corporations (28 U.S.C. 1332(c)), established dual, or even multiple "citizenship" of corporations: the state of incorporation, the state where the "principal office" is located, and any additional state where re-incorporated. The difficulties in defining "principal office" are illustrated by the cases interpreting this amendment. See Moore's Federal Practice, sections 0.76-0.78.

We conclude that subdivision 2 is valid under the due process and equal protection clauses of the state and federal Constitutions. The peremptory writ of mandate is granted, and respondent court is ordered to annul its order quashing the writ of attachment.

Roth, P. J., and Compton, J., concurred.

The petition of real party in interest GSC Development Corporation for a hearing by the Supreme Court was denied April 6, 1972.