[Civ. No. 38662. Second Dist., Div. Two. Dec. 27, 1972.]

CHRYSLER CREDIT CORPORATION, Plaintiff and Respondent, v. KARL WAEGELE et al., Defendants and Appellants.

682

---

**COUNSEL**

Linder, Schurmer, Drane & Bullis, Martin H. Kadish and Scott Schurmer for Defendants and Appellants.

Cooksey, Coleman & Howard, Cooksey, Schumacher, Coleman, Minyard & Howard, Paul Cooksey and Harold G. Minyard for Plaintiff and Respondent.

## OPINION

**COMPTON, J.**—Ralph Williams and Karl Waegele, along with Ralph Williams, Inc., a California corporation, were on July 30, 1971, adjudged to be in contempt of the Superior Court of Los Angeles County for violating a temporary restraining order issued by that court on February 23, 1971, contemporaneously with the filing by plaintiff of a complaint for permanent injunction. The violations occurred on February 25 and 26, 1971.

Ralph Williams Gulfgate Chrysler Plymouth (hereafter Gulfgate), a Texas corporation, doing business in California, was named along with Waegele and Ralph Williams, Inc., as defendants in the original complaint. Williams is the sole stockholder and president of both corporations and Waegele is vice president of both.

Waegele, Ralph Williams, Inc., and Gulfgate appeal from an order of the superior court entered on March 31, 1971, denying their motion to quash service of the temporary restraining order.

The order is appealable pursuant to Code of Civil Procedure section 904.1, subdivision (f)[1] and if the appeal is meritorious the effect would be to invalidate the contempt adjudication made subsequent to the order. (*Elysium, Inc.* v. *Superior Court,* 266 Cal.App.2d 763 [72 Cal.Rptr. 355].)

Waegele and the two corporate defendants mount their primary attack on the temporary restraining order with a claim that Code of Civil Procedure section 527 insofar as that section permits the issuance of a temporary restraining order ex parte and without notice, violates due process as provided in the Fifth Amendment to the United States Constitution and made applicable to the states by the Fourteenth Amendment and article I, section 13 of the California Constitution.

Secondarily they assert that in any event service upon them was defective and failed to comply with California statutory requirements resulting in a failure to acquire personal jurisdiction.

### FACTUAL BACKGROUND

Gulfgate and plaintiff Chrysler Credit Corporation entered into a dealer loan and security agreement whereby Chrysler provided financing for Gulfgate's purchase of new and used cars, said financing loan being secured by 40 automobiles then located in Texas.

---

[1]"An appeal may be taken from a superior court in the following cases: . . . (f) From an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction."

Chrysler, claiming a default by Gulfgate on January 10, 1971, commenced an action on February 18, 1971 in Texas to gain possession of the 40 automobiles. It appears that Gulfgate had moved the cars to California on February 12, 1971.

On February 23, 1971, Chrysler commenced this action in California by filing a verified complaint seeking an injunction to prevent defendants from disposing of the automobiles and to require delivery of said cars to Chrysler. No summons was issued but in response to Chrysler's prayer for a temporary restraining order the superior court determined that unless such order was issued "great and irreparable injury will result to plaintiff before the matter can be heard on notice." Consequently, that court set an order to show cause hearing for March 10, 1971, and pending said hearing restrained defendants from "disposing of by sale or otherwise, forty automobiles standing in the name of Ralph Williams Gulf Gate Chrysler-Plymouth, Inc. or defendant Ralph Williams, Inc., or in any other name." A bond of $120,000.00 was posted.

The complaint, order to show cause and temporary restraining order were personally served on Waegele in California on that same date. Subsequently, 39 of the cars were sold to Ralph Williams, Inc., who in turn sold them to Ralph's Chrysler Plymouth, yet another of Williams' corporate entities.

### THE CONSTITUTIONALITY OF CODE OF CIVIL PROCEDURE SECTION 527

■ According to defendants the temporary restraining order which deprived them of the ability to sell or otherwise dispose of property in their possession was tantamount to a pre-judgment attachment without notice and hearing, which procedure and the statute authorizing it must fall victim to the principles first enunciated in *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]; and extended by *McCallop* v. *Carberry*, 1 Cal.3d 903 [83 Cal.Rptr. 666, 464 P.2d 122]; *Blair* v. *Pitchess*, 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242]; and *Randone* v. *Appellate Department*, 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13].

*Sniadach* invalidated, as violative of due process, a Wisconsin statute permitting summary pre-judgment attachment of wages for the very practical reason that its use could create an economic hardship that would foreclose any possibility of litigating a meritorious defense.

*McCallop* extended the ban of *Sniadach* to California's less stringent but similarly structured garnishment procedure.

*Randone* found the pre-judgment attachment procedure of Code of Civil Procedure section 537, subdivision 1 for property other than wages to be overly broad in permitting attachment even of "necessities of life" without notice and hearing in actions having "no rational relation to either the public's or creditors' need for extraordinary prejudgment relief." (P. 541.)

The procedures at issue in the foregoing cases involved a deprivation of possession of property which was not the subject of the basic litigation nor was it property encumbered as security for the debt being sued upon nor property in which the creditors claimed an interest.

*Blair* v. *Pitchess* took the next step by invalidating California's claim and delivery procedure which permitted pre-judgment *seizure* of property in which the creditors did claim an interest. The court there noted that ". . . 'the great majority of items repossessed at residential locations are applicances such as television sets, refrigerators, stoves and sewing machines, and furniture of all kinds' " (p. 279), items which under modern living standards are somewhat akin to necessities of life.

*Randone* and *Blair* were logical extensions of and consistent with the underlying spirit of *Sniadach. Sniadach,* however, contained language which was repeated with approval in *Randone* and *Blair* to the effect that because of a danger that the debtor may abscond with the property or other such limited extraordinary circumstances "the interest of the creditor in preserving the claimed property and the interest of the state in preserving its jurisdiction" may justify the "special protection afforded by a summary remedy." (Citing *Ownbey* v. *Morgan,* 256 U.S. 94 [65 L.Ed. 837, 41 S.Ct. 433, 17 A.L.R. 873].) (*Blair* v. *Pitchess,* 5 Cal.3d 258, 279 [96 Cal.Rptr. 42, 486 P.2d 1242].)

Thus in *Property Research Financial Corp.* v. *Superior Court,* 23 Cal. App.3d 413 [100 Cal.Rptr. 233] (hg. den. April 6, 1972), this court examined subdivision 2 of the Code of Civil Procedure section 537 providing for summary attachment of property belonging to a non-resident defendant.

We concluded "that a 'situation requiring special protection to a state or creditor interest' [citation] is present in nonresident attachment, and that consequently the statute authorizing its use is constitutionally valid." (*Property Research Financial Corp.* v. *Superior Court,* p. 421.)

It was there stated in distinguishing *Sniadach* and *Randone* that "In balancing the creditor's claim to *effective* process against the nonresident debtor's claim to *due* process, i.e., notice and hearing prior to attachment, we note that attachment of a nonresident's property will not ordinarily

involve his necessities for day-to-day living, . . ." *(Property Research Financial Corp.* v. *Superior Court,* p. 420.)

Code of Civil Procedure section 537, the statute now engaging our attention, in several respects varies markedly in its application from that of the garnishment, attachment or claim and delivery procedures involved in *McCallop, Blair* and *Randone.*

To begin with, the use of a temporary restraining order is not confined to matters involving a debtor-creditor relationship, nor for that matter to situations involving property. When, as in this case, a temporary restraining order is used to affect the disposition of property, it does not involve the invasion of privacy attendant on claim and delivery nor does it result in seizure of the property as in attachment or claim and delivery. While it is possible that a temporary restraining order may impair the defendant's freedom of use of property, in the ordinary course of events it is not likely to deprive a person of the necessities of life nor create the economic hardship which the court envisioned in the above cited authorities.

More significantly, however, section 527 limits the issuance of a temporary restraining order without notice and hearing to those cases where the applicant can demonstrate that "great or irreparable injury would result to the applicant before the matter can be heard on notice." Thus it is narrowly drawn and meets the objection which the *Randone* court raised to section 537, subdivision 1 when it observed at page 544 that the subdivision "does not require a creditor to prove, or indeed even allege, any special circumstances requiring the immediate attachment of the defendant's property in the specific case; . . ."

Defendants contend that the language "great or irreparable injury" is not narrow but on the contrary is ambiguous and elusive. They suggest that the Legislature be required to specifically enumerate the particular circumstances which could be characterized as sufficiently "extraordinary" to justify a summary procedure. We disagree. Those words have been used often in our law and are capable of accurate judicial application. Their presence in this statute represents a significant "narrowing" of the court's discretion in authorizing summary relief.

We also note the very rigid and short time limitation which the statute provides: "In case a temporary restraining order shall be granted without notice, in the contingency above specified, *the matter shall be made returnable* on an order requiring cause to be shown why the injunction should not be granted, *on the earliest day that the business of the court will admit of, but not later than* 15 days *or, if good cause appears to the court, 20*

*days from the date of such order.* When the matter first comes up for hearing the party who obtained the temporary restraining order must be ready to proceed and must have served upon the opposite party at least two days prior to such hearing, a copy of the complaint and of all affidavits to be used in such application and a copy of his points and authorities in support of such application; if he be not ready, or if he shall fail to serve a copy of his complaint, affidavits and points and authorities, as herein required, the court shall dissolve the temporary restraining order." (Italics added.)

Finally, the issuance of a temporary restraining order is a judicial act and thus is to be distinguished from the ministerial act of the clerk which is involved in attachment, garnishment and claim and delivery.

It is apparent that this statute is "one which is cognizant of, and sensitive to, the constitutional interests exposed by *Sniadach* and the subsequent cases." (*Randone* v. *Appellate Department,* p. 547.)

An examination of section 527 reveals that in addition to serving the interest of the applicant it serves the interest of the state in the power of the courts to preserve the status quo as a necessary adjunct to their ability to render an effective judgment.

Thus, we conclude that a "situation requiring special protection to a state or creditor interest" is present in the use of a temporary restraining order. The statute authorizing the use of such an order in California is narrowly drawn and satisfies the requirements of due process of law. Furthermore, the use of a temporary restraining order under the facts of this case was not offensive to either constitutional or equitable principles.

### THE VALIDITY OF THE SERVICE OF THE TEMPORARY RESTRAINING ORDER

Defendants contend that the court below lacked jurisdiction for the reason that the documents served on Waegele which included the temporary restraining order did not include a summons. They rely on Code of Civil Procedure section 410.50 which provides in pertinent part: "(a) Except as otherwise provided by statute, the court in which an action is pending has jurisdiction over a party from the time the summons is served on him as provided by Chapter 4 (commencing with section 413.10). . . ."

In adjudging the defendants to be in violation of the temporary restraining order, the Honorable Charles H. Church, judge of the superior court, filed a written opinion which very succinctly and correctly disposes of this issue. We adopt as ours the portion of that opinion dealing therewith as follows:

"The court has concluded that it does not lack jurisdiction to hear the contempt for the following reasons:

" 'An injunction is a *writ or order* requiring a person to refrain from a particular act. It may be granted by the court in which the action is brought, or by a judge thereof; and when granted by a judge, it may be enforced as an order of the court.' (Italics added.) (Code Civ. Proc., § 525.)

"Code of Civil Procedure section 17, subdivision 6, provides:

" 'The word "writ" signifies an order or precept in writing, issued in the name of the people, or of a court or judicial officer; and the word "process" a writ *or* summons issued in the course of judicial proceedings.' (Italics added.)

"Process is a means whereby a court compels compliance with its demands. It appears, therefore, that 'process' may be either a writ or a summons.

"Code of Civil Procedure section 187 provides: 'When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, *if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code.*' (Enacted 1872. As amended Code Amend. 1880, ch. 35, p. 43, § 1.) (Italics added.)

"The constitutional guaranty of due process requires that a reasonable method of giving notice be provided and that a reasonable opportunity be given for a hearing.

"The method of giving notice that a temporary restraining order has issued and that an opportunity for a hearing will be given is satisfied by the statutory provision for serving the writ (O.S.C.) which commands the appearance of the parties before the court for a hearing on the limited question of whether or not a preliminary injunction should issue. In this respect, it is similar in effect to the summons which issues in a civil case requiring the defendant to appear and respond to the allegations of the complaint. Until legal service of process has been made, the court has no jurisdiction to render judgment, even though the defendant may have actual knowledge of the pendency of the action; however, service of a summons in addition to the writ (O.S.C.) would add nothing to the order of the court commanding defendant(s) to appear for a hearing on the Preliminary Injunction. The purpose of a T.R.O. or Preliminary Injunction

is to preserve the status quo of the parties pending determination of the issues of the case and to protect the parties against loss or damage by the requirement of an appropriate bond. For that purpose, service of the writ meets all the requirements of due process, although the summons may not have previously been served and is not served concurrently.

"Defendants have raised the issue of the capacity in which Karl Waegele was served. The temporary restraining order, order to show cause and complaint are plainly directed to Ralph Williams, Inc., Gulf Gate, Karl Waegle and Ralph Williams. There is no question but that adequate notice was given to the corporate defendants and Karl Waegele individually, that they were commanded to appear and show cause why a preliminary injunction should not issue. . . ."

Finally the judge observed: ". . . . The haste with which the transaction was consummated leads the court to the conclusion that the parties and their attorney were willing to accept the consequences of a contempt proceeding in exchange for putting the automobiles beyond the easy reach of the creditor and dispels any reasonable inference that the acts of the defendants were not willful and deliberate."

We agree.

The order appealed from is affirmed.

Roth, P. J., and Herndon, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 22, 1973.